## HOUSTON CLINIC et al. v. BUSCH.
### No. 9867.

Court of Civil Appeals of Texas. Galveston.
July 7, 1933.

Rehearing Denied Nov. 16, 1933.

Hunt & Hunt, of Houston, for appellants.

Gordon O. McGehee, of Houston, for appellee.

1104

PLEASANTS, Chief Justice.

The following sufficient statement of the nature and result of this suit is copied from appellants' brief:

This suit was instituted by the appellee, Hulen Busch, as plaintiff, against the Houston Clinic, a partnership, composed of James H. Agnew, P. R. Cruse, F. E. Dye, C. P. Harris, W. Burton Thorning, A. Philo Howard, M. B. Stokes, Paul W. Best, W. A. Clark, and J. Thomas Jones, and against the members of said partnership individually as defendants.

The plaintiff by his first amended original petition in substance alleged that on or about June 22, 1931, the plaintiff was suffering from an attack of appendicitis and' was at that time in St. Joseph's Infirmary, a hospital in the city of Houston, and that plaintiff, for a good and valuable consideration, entered into a contract with the defendants wherein the defendants were engaged and employed by the plaintiff to operate upon him for appendicitis and that the defendants accepted said employment and' operated on plaintiff. That as a part of said operation, the defendants inserted a needle in plaintiff's spine and there broke the same and permitted said needle to remain in plaintiff's back without informing plaintiff that said needle was broken off, and that as a result the plaintiff suffered great pain, and excruciating agony, and that upon calling the attention of the defendants to his condition and suffering, the defendants admitted that said needle had been broken off and had not been removed; that plaintiff requested defendants to remove the needle, but defendants refused to remove same unless plaintiff would pay them the additional hospital expenses connected' with an operation to remove said needle; that the plaintiff declined to pay said additional hospital expenses and employed other doctors to remove the needle, who charged him the sum of $100 for the operation; and that he was compelled to expend $10 for X-ray plates.

The allegations of negligence on the part of the defendants, material to this appeal, briefly stated, were as follows:

(a) In breaking the needle off in plaintiff's back.

(b) In not using said needle in a careful and prudent manner.

(c) In leaving said needle in plaintiff's back.

(d) In not removing said needle as soon as it was broken off.

(e) In refusing to treat and operate on plaintiff in removing said needle after it was made known to defendants that said needle had been left in plaintiff's body after the completion of said operation.

(f) In failing to remove said needle from plaintiff's body without additional hospital expense.

The damages alleged totaled $950, of which sum $110 was doctor's bills, $270 was for loss of time and incapacity, and $570 was for mental and physical pain and suffering.

The defendants answered by a general demurrer and general denial.

In response to the special issues submitted to it, the jury found' that the defendant was not negligent in removing the needle at the time it was broken off; that the defendant was negligent in not removing the needle after the plaintiff visited the Houston Clinic after the appendicitis operation; that such negligence was a proximate cause of the plaintiff's injuries; and that the plaintiff had been damaged in the sum of $150 for mental anguish and suffering; $110 for doctor's bills, and $270 for loss of earning.

In accordance with this verdict, judgment was rendered in favor of appellee for the sum of $530, the sum of the several items of damage found by the jury.

Appellants first complain of the refusal of the trial court to instruct the jury to return a verdict in their favor, on the ground that there is no evidence raising the issue of negligence on their part in any of the particulars alleged in plaintiff's petition.

This contention of appellants cannot be sustained.

The trial court did not submit the issue of negligence on the part of Dr. Thorning, the member of appellant firm who performed the operation in which the needle was broken in appellee's back, in breaking the needle, and the jury found in favor of appellants on the issue of negligence of Dr. Thorning in not removing the needle at once. The only negligence found by the jury was the failure of Dr. Thorning to remove the needle after appellee visited him at the hospital, some three weeks after the operation, and complained of soreness in his back. We cannot agree with appellants that the finding of the jury upon this issue is without any evidence to support it. Dr. Biscoe, the physician who removed the needle, testified in effect that the broken needle was working down into appellee's back, and that a broken needle left in a human body should be removed as soon as possible to prevent its moving around. This witness and Dr. Davis, a witness for appellants, both testified that a broken needle near the spine might work its way into the spine and cause paralysis. Dr. Biscoe further testified that the broken needle had worked its way an inch or more into the muscles of the back, while Dr. Thorning had testified that it was just under the skin when it broke.

We do not think it can be doubted that this evidence raised the issue of negligence on the part of appellants in allowing the needle to remain in appellee's back, after Dr. Thorn-

ing was informed by appellee of the painful condition of his back.

The charge of the court submitting to the jury the question of damage sustained by appellee because of the alleged negligence of appellants is as follows:

"Special Issue No. 5. What amount of money, if paid in cash now, will fairly and adequately compensate the plaintiff, Hulen Busch, for alleged injuries, if any, suffered by him as a proximate result of his injuries, if any, on the occasion in question, taking into consideration as exclusive elements of damage if shown by the evidence to result from such injuries, the following and none other:

"(1) Mental anguish and suffering to the plaintiff, Hulen Busch, therefrom, if any, from the 22nd day of June, 1931, down to the date of this trial.

"(2) The reasonable value of necessary medical and surgical treatment, if any, rendered to the plaintiff, Hulen Busch, from the 29th day of July, 1931, down to the date of this trial.

"(3) Loss of earnings, if any, to the date of trial.

"You will answer this question in dollars and cents, in separate amounts, if any, as you may find for the several items submitted, to the exclusion of any other.

"You will answer the questions submitted to you as you find the preponderance of the evidence to be. By the preponderance of the evidence is meant the greater weight of credible testimony."

Appellant under an appropriate assignment and proposition assails this charge on the ground that it was error to instruct the jury to give appellee compensation for his mental anguish and suffering from June 22, 1931 (the date of the appendicitis operation), down to the date of the trial, because the evidence shows that appellee did not suffer any pain or anguish because of the needle in his back until about three weeks after June 22, 1931.

Appellee testified that he first complained to Dr. Thorning of his back when he called on him on July 15, 1931, three weeks after his appendicitis operation on June 22, 1931, and that his back had been troubling him "three or four days before that time." Such being the evidence as to the time appellee's suffering from the needle left in his back commenced, it was, we think, clearly error for the court to instruct the jury to allow appellee compensation for any mental anguish and suffering he had experienced from the time of his appendicitis operation. It is a matter of common knowledge that an operation for appendicitis necessarily causes pain and suffering, both physical and mental, and there is abundant evidence in this record that appellee suffered such pain

and anguish from the date of his appendicitis operation. The jury having found that there was no negligence in the breaking of the needle in administering the anesthetic for the appendicitis operation, nor in the failure to remove the needle prior to the time appellee complained to Dr. Thorning that his back was troubling him, appellant cannot be held liable for any pain and suffering caused by the needle being left in his back, prior to the date of such complaint.

This objection to the charge was made in due time and in proper manner, and appellant's complaint of this error must be sustained.

Appellant further complains of the verdict awarding appellee $110 expended by him for the services of Dr. Biscoe in removing the needle from his back, on the ground that such expenditure was unnecessary, because Dr. Thorning offered to remove the needle without any charge for his professional services.

The evidence shows that on appellee's insistence at the time of his third visit to Dr. Thorning on July 24th, that the needle be removed, the doctor told him to go to the hospital that evening and he would remove the needle the next morning without any charge for his services, but that appellee would have to pay the hospital fees, which would amount to $50 or $60.

Appellee testified in regard to this interview:

"I demanded again that he take the needle out and he says, you go to the hospital at four o'clock and I will be over in the morning and operate on you. He says, now, of course, there will be a little expense to that. He says the Hospital expenses, ten dollars for the operating room, somewhere around fifty or sixty dollars, and my wife told him she thought there would be no expense. Why, he said, nobody went to the hospital without paying. Well, I says, you broke the needle off in my back. Yes, he said, I broke it off, and I will take it out, but will not bear any expense. I told him all right, sir, and got hot and walked out and haven't been back since."

The evidence further shows that appellee insisted that the operation for removing the needle be performed by Dr. Thorning in his office, but the doctor declined to do this, and told the appellee he must go to the hospital. Several days later the operation was successfully performed by Dr. Biscoe in his office and appellee was sent home a few hours thereafter. Dr. Thorning and Dr. Davis both testified in substance that the operation could have been performed in Dr. Thorning's office, but that the safest and best place for such operation was at a hospital, and there is no testimony to the contrary. Appellants are not shown to have owned or

had any interest in the hospital in which the operation for appendicitis was performed and to which Dr. Thorning desired appellee to go to have the needle removed.

Upon this state of the evidence it was unnecessary, it seems to us, for appellee to expend more than the hospital fees for having the needle removed, and the verdict for $110 as reasonable and necessary medical and surgical treatment in the removal of the needle cannot be sustained.

For the errors indicated, the judgment is reversed and the cause remanded. Justice GRAVES dissents from our conclusion that the judgment should be reversed and will file a dissenting opinion.

Reversed and remanded.

GRAVES, Justice (dissenting).

The appellants' contention that the trial court erred in submitting that subdivision of special issue No. 5, that is, item (1) thereof, permitting the recovery for any pain that may have been suffered by the appellee between the date the needle was left in his backbone on the 22d day of June of 1931, and the date of this trial below, on the ground that the undisputed evidence showed he did not suffer any pain in his back until four days less than three weeks after the needle was so broken off in his back, is obviously unsound; it is true that in one place in his cross-examination on his second recall to the stand the appellee, after he had answered that he first made complaint to Dr. Thorning about this pain in his back three weeks after the doctor had operated on him for appendicitis, further said that his back had been troubling him "about three or four days before that at home"; but, against the meaning the context and setting otherwise give to this statement, appellants construe it as meaning that this was the first time he had ever had such pain, whereas he and several other witnesses in his behalf elsewhere make very clear that he had been having such pain and suffering in his back, and, as a result of the presence of the needle, almost from the time it had been left in his body, certainly not longer than the week after he had gone home from the appendicitis operation; it seems plain therefore that all he meant by the expression appellants rely upon in this connection is that he had been troubled with his back for three or four days at his home before he made the complaint concerning it to Dr. Thorning he was then testifying about; at any rate, there is plenty of testimony to raise the issue of such suffering on his part from this cause between the two dates mentioned—beginning much earlier than four days before the expiration of three weeks after the needle was broken off in him—and the entire statement of facts will be searched in vain for any at all to the contrary, since

neither he himself in the quoted response, nor otherwise, nor any other witness, ever testified that that was the first time he had suffered from pain in his back—his own statement simply being that he first made complaint to Dr. Thorning about this pain "three weeks after the day I was operated on"—both he and all the others bearing witness to prior as well as subsequent suffering in these among other replies:

The appellee himself on original direct examination testified that after he had been home from the appendicitis operation about a week, he suffered pain in his back.

"It was just a sharp pain. Every time I bent over my back hurt. I couldn't sleep, it was throbbing and would feel like,—well, part of my back was sore as a boil, and I couldn't rest or anything.

"Q. How was your side at that time? A. It was all right.

"Q. You are not making any complaint about the appendicitis operation? A. No, sir."

Mrs. Busch, the appellee's wife, when asked whether she had noticed any difference in her husband's condition before and after the operation, answered:

"Yes, sir.

"Q. What's the difference? A. Well, he has been nervous, and isn't near so strong as he was before. He has been sick quite a bit.

"Q. Has he been sick? A. Well, he suffers so much agony and pain.

"Q. Well, where was the pain? A. In his back.

"Q. State whether or not he appeared nervous? A. Yes, sir, he was awful nervous,—couldn't rest at night."

Witness R. W. Kyle on the same subject testified:

"Q. Have you seen him since June 20th, 1931? A. Yes, sir.

"Q. How often have you seen him? A. Well, I saw him on several occasions after he was operated on.

"Q. Well, did you notice any difference in his physical appearance? A. Yes, sir.

"Q. What was the appearance? A. Well, I was at his father's market there in Humble the first time I saw him up after he was operated on for appendicitis and asked him how he was getting along and he said all right, but complained of his back bothering and hurting him.

"Q. Do you remember about when that was? A. Well, it must have been around the last of June, as well as I remember it.

"Q. Well, did you see him after that? A. Yes, sir.

"Q. Well, when you saw him after that did he appear to be suffering pain? A. Well, he

showed, more or less, from his looks that he was suffering,—he was drawn and pale.

"Q. Well, how often have you seen him since then? A. Well, off and on ever since then I might say.

"Q. Well, how long would you say that he was suffering pain; from your observation of him that he appeared to be suffering pain? A. Well, it was a month or more, I guess."

Likewise, on the same inquiries, the witness Albert Poskey, after stating that he knew about when Busch had been operated on for appendicitis, said:

"Q. When was that? A. I think about the middle part of June, around the 20th,—the middle part of June, somewhere around there.

"Q. Well, have you seen him much since then? A. After he was operated on?

"Q. Yes. A. Yes, sir, saw him right smart.

"Q. Have you noticed any difference in his physical appearance? A. Yes, sir.

"Q. What difference have you noticed? A. Well, he wasn't—he seemed like he wasn't as able, I mean, as strong coming down from the operation.

"Q. State whether or not he appeared to be suffering pain? A. Yes, sir, he did—the expression of his face told he was suffering.

"Q. Well, how long would you say he suffered pain after the operation? A. Well, he suffered with those pains to the time he was operated on for the needle to be took out of his back."

In the face of the cited testimony, to say nothing of more of the same effect in the record, inclusive of Dr. Biscoe's uncontradicted statements that, when the appellee first came to him, he had lost much weight since the appendicitis operation, both complained of and gave evidence of having suffered pain, that he then removed the needle from a position it had worked around to toward the stomach, and that the appellee was still under his professional care for this injury on the date of the trial, it seems inept to yet insist that a reversal should be ordered because of the court's having submitted the carefully-qualified special issue No. 5, over this sole objection of appellants thereto:

"The undisputed evidence being that the plaintiff did not suffer any mental anguish or pain until about four days prior to his first visit to Dr. Thorning's office, three weeks after the 22nd day of June, 1931."

Especially so, when the issue was framed in such way as to accurately follow the only cause of action either declared upon or supported by any proof at all, that is, injuries (inclusive of pain and suffering) resulting solely from the leaving of the needle in the appellee's body, and specifically forbade the allowance of any recovery on that, unless it was shown by a preponderance of the evidence to have been endured between the time the needle was admittedly so broken off and this trial.

Neither is it thought a reversal should be ordered because the $110 item allowed as reasonable and necessary medical and surgical expense cannot be sustained in toto; since the uncontradicted testimony shows that $50 was all the appellee would have been compelled to expend for hospital fees, had he accepted Dr. Thorning's offer to remove the needle there without charge for medical service, that sum only of the $110 awarded should be allowed, and, with the recovery so reduced on that feature, the judgment should have been affirmed. This dissent from the court's refusal to so order is respectfully entered.