[Civ. No. 39. Fourth Appellate District.—December 23, 1929.]

JOE MOORE, Appellant, v. CLAUDE E. STEEN et al., Respondents.

Harvey & Harvey, John A. Harvey, Milburn G. Harvey, and W. F. Menton for Appellant.

Head, Rutan & Scovil for Respondents.

SLOANE, P. J.—This appeal was taken to the Supreme Court from a judgment of nonsuit and afterward transferred to the Fourth District Court of Appeal for decision.

The action is for damages sustained by plaintiff through an injury to his body alleged to have been inflicted upon him by the defendants, their agents and employees, in negligently, carelessly and unskilfully exposing him to the X-ray for the purposes of diagnosis, and while the relation of physician and patient existed between plaintiff and defendants. The cause was tried before a jury, and at the conclusion of plaintiff's evidence, defendants moved for a nonsuit, which motion was granted, and from which judgment of nonsuit the plaintiff has taken this appeal.

The motion for nonsuit, as appears in the record, is as follows:

"If the court please at this time the defendants and each of the defendants move the court for a judgment of nonsuit under the provisions of subdivision 5 of section 581 of the Code of Civil Procedure, on the ground that the plaintiff has failed to prove a sufficient case for the jury; and on the further ground that the plaintiff has failed to prove a sufficient case for the jury as to *any* of the defendants; on the further ground that plaintiff has failed to prove the material allegations of his complaint as to all or any of the defendants; and on the further ground that the plaintiff has failed to prove a sufficient case to sustain any verdict in his favor by the jury against these defendants or against any one of the defendants."

Appellant first attacks the ruling and judgment of the court on motion for nonsuit, on the ground that the motion does not specify the precise grounds upon which it is made.

It is the settled law in this state that a motion for nonsuit must point the attention of the court and counsel to the precise grounds upon which it is made, and it is not sufficient to state generally that there is no evidence before the court justifying it granting any relief to the plaintiff or that plaintiff has failed to prove a sufficient case. The motion should show wherein the plaintiff failed to prove his case. (9 Cal. Jur., p. 548, sec. 33, and authorities cited.) It will be observed that the allegations of insufficiency of the proof, although repeated in various terms, amounts simply to the general allegation of an insufficiency of the evidence to support a judgment, and fail to point out as to what particular issue in the case the evidence is insufficient.

It is error to grant a motion for a nonsuit where the grounds therefor are not stated. The reason for this rule is stated in *Christensen Lbr. Co.* v. *Buckley,* 17 Cal. App. 37, 43 [118 Pac. 466, 468], as follows:

"The reason for the rule requiring the grounds of a motion for a nonsuit to be stated is to afford the plaintiff an opportunity to correct any defects of pleading or proof which admit of correction."

If there was any failure of proof in the present case to sustain a judgment for the plaintiff, it was as to the matter of establishing that the injury sustained by plaintiff was due to negligence on the part of defendants. If this particular ground of omission had been pointed out, particularly as to the respect in which the evidence was insufficient, the plaintiff might have been able to supplement his evidence in a manner to meet the alleged insufficiency.

Passing this point for the present, and considering the motion on its merits, the question arises whether there was such an absence of proof of negligence in administering the X-ray test as to justify withholding the case from the jury and granting a judgment of nonsuit.

■ There is no question, under the proof submitted, but that the defendants, as physicians and surgeons, were in the employment of plaintiff to diagnose his case and ascertain what was ailing him. That in doing so, they resorted to these X-ray tests, and that by reason of exposure to the X-ray, the plaintiff suffered a third-degree burn, which developed into an ulcerated sore, causing plaintiff intense suffering and incapacitating him for a long period of time to follow his regular employment. The only element of proof necessary to recovery by the plaintiff, which is subject to a question as to its sufficiency, is evidence that the injury sustained was owing to negligence on the part of defendants.

Unless the doctrine of *res ipsa loquitur* applies to this case, it must be admitted that the evidence of negligence is extremely meager, and depends upon a process of elimination.

There were three possible causes for the injurious effects of the X-ray upon the plaintiff developed by the testimony of the medical experts who testified. First, negligent and

dangerous excess of electric current permitted to go through the X-ray machine. Second, hypersensitiveness of the patient to such electric exposure, unknown to the defendants, Third, latent defects in the X-ray machine and apparatus, or dispersion of secondary rays in the operation, which latter, it seems, is not subject to the control of the operator. It was shown in evidence that the patient was not hypersensitive, which leaves the two alternatives, either that the X-ray was negligently operated, or the burns were caused by some conditions in the operation due to latent and undiscovered defects in the machinery, or to a dispersion in an unusual manner of the electric current, from causes unknown to, and beyond the control of the defendants.

One of the defendants testified that this X-ray machine was one which had been in their use and possession for a considerable time, and it seems extremely improbable that the injuries to the plaintiff resulting from its use were occasioned by defects in the apparatus or in its dispersing the electric current in a manner which had not previously been manifested in the operation of this X-ray appliance. If we could deal in probabilities, they would preponderate largely toward the conclusion that the injury to plaintiff was caused by an excessive and unusual application of the electric current, either as to time or quantity, through the fault of the operation.

Arguing on this point, counsel for respondent says:

"Assuming that the question of hypersensitivity is removed in the case at bar, the other possible causes of the burn testified to by plaintiff's experts, namely, hidden defects in the X-ray machine or in the milliammeter or the secondary rays, were not removed by any testimony or evidence whatsoever. The reasoning of the decisions referred to by appellant, and admitted by him to be good reasoning on page 14 of his opening brief, still remains, namely, that where the evidence shows the burn could have resulted from two or more possible causes, then the result alone does not prove what was the cause of the burn."

We doubt if the burden of eliminating this last possible explanation of plaintiff's injuries to relieve defendants from liability, can, under the circumstances of this case, be thrown on the plaintiff. Here is an apparatus which had

been long in the possession and use of the defendants, and which, if it possessed latent defects, its power for evil would naturally have developed before the treatment of plaintiff, an apparatus of which the plaintiff could have no possible previous knowledge or means of determining its secret and undisclosed possibilities. It would seem no more than reasonable that the doctrine of *res ipsa loquitur* should apply at least to throwing the burden of proof on the defendants to show the existence of some condition of this X-ray apparatus that was beyond their knowledge or control, as relieving them from the implication of negligence in its operation.

As stated in the opinion of Mr. Justice Chipman, P. J., in *Koskela* v. *Albion Lbr. Co.*, 25 Cal. App. 12, 26 [142 Pac. 851, 856], where a workman was injured by the giving way of an appliance known as a "Traveler," by which the plaintiff was being transferred in the customary manner from the shore to the vessel on which he was employed:

"It is difficult to conceive of appliances that had during the day carried safely many loads of two or three tons weight, suddenly, without fault of the operators or the appliances themselves, breaking down under a load of three hundred pounds. If the accident was susceptible of an explanation consistent with the assumption that the appliances were adequate in their operation by defendants without fault, the burden was upon defendants so to show to the satisfaction of the jury."

The defendants claim they had no knowledge of any defects in the appliances which it is alleged had been carefully inspected prior to their use, and that the "accident was a casualty which no act of the defendants could have foreseen or prevented, and was caused through the breaking of a metal device of the loading apparatus, through a latent, unknown and undiscoverable defect in the metal thereof." There would seem to be the same reason here for throwing the burden upon the defendants to establish any defense of a latent and unknown defect in the structure or operation of the appliances used for this X-ray operation.

As to the general application of the doctrine of *res ipsa loquitur* to the use of the X-ray, it seems to be a matter of agreement between both parties that the weight of authority in recent decisions in other jurisdictions is against it, and it is conceded that ordinarily this doctrine cannot

be applied in cases of alleged malpractice of physicians and surgeons in the treatment of disease.

The doctrine as laid down by Judge Taft in *Ewing* v. *Goode*, 78 Fed. 442, in the following language, is undisputed:

"Before the plaintiff can recover, she must show by affirmative evidence first, that defendant was unskillful or negligent, and second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. . . . A physician is not a warrantor of cures. If the maxim *res ipsa loquitur* were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad results, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the ills that flesh is heir to."

It may be noted, however, that this is not a case claiming damages for malpractice in the treatment of disease, but for negligence in the process of a diagnosis to ascertain the cause of plaintiff's ill health. This distinction in the application of the rule under consideration seems to be recognized in the decisions.

There is a reason in the interests of the service of the public, as pointed out in the quotation from Judge Taft's opinion, why a distinction might be made between the diagnosis of a case and the treatment of the disease for curative purposes.

The accepted rule of *res ipsa loquitur* is stated as follows:

"When a thing which caused the injury, without the fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur, if the one having such control uses proper care, it affords reasonable evidence, in the absence of explanation, that the injury arose from the defendant's want of care. (*Koskela* v. *Albion Lbr. Co., supra; San Juan Light & Transit Co.* v. *Requena*, 224 U. S. 89 [56 L. Ed. 680, 32 Sup. Ct. Rep. 399]; *Hill* v. *Pacific Gas & Elec. Co.*, 22 Cal. App. 788 [136 Pac. 492].)"

The conditions of the instant case come well within the terms of this rule, unless excluded by the doctrine exempting physicians in the treatment of disease.

The only California decision cited by either party bearing on the situation here is one cited by appellant in the oral argument on this appeal, in which case the opinion was rendered in March, 1929, long after the judgment of nonsuit in this case.

This decision, *Ragin* v. *Zimmerman*, 206 Cal. 723 [276 Pac. 107], is an X-ray damage case, and has many points in common with the instant case, and while the court holds the evidence of negligence sufficiently proved by plaintiff, it declares that the doctrine of *res ipsa loquitur* might properly be applied.

The plaintiff was subjected to an X-ray process in a dentist's office for the purpose of ascertaining the condition of the patient's chin and jaw, and the "alveolar process and other related parts of the dentigerous anatomy." The operation resulted in electric burns, shock and physical and mental pain, inflicted upon the patient by the alleged negligent and careless operation of the X-ray. The trial of the case resulted in a judgment for the plaintiff. The evidence disclosed that the plaintiff was badly burned in the operation, at several places about her face, limbs and body. The immediate cause of the burning was attributed under the evidence to bringing the apparatus so close to the patient's knees that she received a severe shock, which caused her to involuntarily change her position so as to occasion the several burns which resulted in her serious injury. The question to be determined was whether or not the shock causing her involuntary movement was the result of negligence on the part of the operator. In the course of the opinion the court says:

"Appellant has devoted a great part of his argument to combating the application of the doctrine of *res ipsa loquitur* to malpractice cases. There is nothing in the record to indicate that the court decided the case by the application of the doctrine of *res ipsa loquitur* or was influenced by that doctrine in rendering its decision. The trial court simply held, and there was evidence in the record to sustain its finding, that the operator of the X-ray machine so 'carelessly, negligently and unskillfully conducted herself in per-

forming the operation of taking the said X-ray picture that she caused the plaintiff to become violently electrified, shocked . . . ' Appellant, upon examining respondent's teeth, placed her in charge of the young lady who operated the X-ray machine, with directions that a radiograph be taken. She was then conducted by the operator to the X-ray machine room and placed in a recumbent position for the taking of the radiograph. The operator's version of what followed is that she instructed respondent to remain very quiet and forewarned her against becoming alarmed at the slight clicking noise which she would hear as soon as the X-ray mechanism was set in motion, and as she pulled the second switch respondent raised her knee so that it either came in contact with or was brought into very close proximity to the X-ray tube, which carries a high voltage of electric current, and that she next observed an electric spark flash from the lower part of the tube toward respondent's knee. Respondent then leaned forward and in an attempt to extricate herself from her peril wrapped herself around the tube, which extended at slight elevation over the body from the extremities to her face. It is admitted that when bodies are brought within certain given distances of said tubes electric sparks are arced, or jump from said tubes and produce burns and cause damage to bodies into which they are inducted. The operator admitted that she placed said highly charged electric tube not more than ten inches above the knees of respondent as she arranged her in the chair for the purpose of taking the picture.

"Respondent, who had no technical knowledge as to the operation or mechanism of an X-ray machine, denied that the operator cautioned her against raising her knees or forewarned her as to the slight clicking noise that would be produced upon turning the switch and positively denied that she raised her knee or otherwise changed her position before she was shocked and burned by the electric flashes. A piece of her dress, which would rest normally upon her knee, was burned. Besides, she received burns on the left side of her face, chest, certain fingers of both hands and on the thigh. The primary cause of the burns and shock is more consistently explicable on the theory that the electric sparks were arced from the tube to the face or upper por-

tion of the body, thereby causing the respondent, either in pain or in fright, to move her lower limbs in an attempt to throw the tube a safe distance from her body or to carry herself from the zone of danger, than on the theory that the slight clicking sound, against which appellant claims respondent had been cautioned, so terrified her that she voluntarily elevated her knee to the extent of ten inches, thus bringing it in contact or near contact with the high voltage electric appliance. The claim of appellant that the first electric current to enter respondent's body was caused by her raising her knees approximately ten inches upon becoming startled at the slight clicking sound which followed the turning of the switch is not, in the light of the situation, consistent with human conduct, and the trial court, no doubt, rejected appellant's version and gave credence to the respondent's account of her conduct up to the time that she received the first electric shock. If it be conceded, in the absence of any evidence sustaining such a concession, that the knee burn was the first received by respondent, that circumstance would not be sufficient to exculpate appellant of negligence. There is ground sufficient for holding that the tube was brought by the operator even closer to respondent's knee than she admitted bringing it. . . . It, therefore, follows that the electric burns which respondent received were the result of defendant's negligence.

"Appellant has cited a number of cases to the effect that the doctrine of *res ipsa loquitur* is not applicable to malpractice cases brought against physicians, surgeons and dentists for errors of judgment committed in the treatment of disease. Such cases have no application whatsoever to the facts of the instant case. Appellant here was not engaged in employing an X-ray as a treatment for disease. . . . His contention now is that the *res ipsa loquitur* doctrine, as applied to physicians, should be extended to include X-ray operators. We are satisfied that the negligence of appellant, as found by the trial court, is supported by the case as presented, and recourse to the doctrine of *res ipsa loquitur* is not necessary. If it were necessary, however, to invoke it, we would not hesitate to apply it to the facts described by the evidence in the instant case. (See discussion of application of rule to electrical devices, 10 Cal. Jur. 199,

200.) It may well be said here, as was said in *Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal. App. 61 [252 Pac. 1082], in applying the doctrine of *res ipsa loquitur* to the facts of a case not so typically illustrative of the reason of the rule as the instant case:

"'We think this doctrine may be urged with more than plausibility. Everything in the present case which in any way contributed to the accident was under the management of the defendant, that in the ordinary course of things, the accident would not have happened if those having the management had used proper care.' . . .

"In *Evans* v. *Clapp*, (Mo. App.) 231 S. W. 79, the doctrine was applied in an action to recover for negligent use of X-ray machines in taking radiographs, in the following language:

"'It is manifest . . . that it cannot be said the jury could not reasonably find that plaintiff received an X-ray burn at the hands of the defendants, and that it was negligently administered. It is a dangerous agency, exceedingly capable of producing serious injury unless administered with care and caution. (*State* v. *Lester*, 127 Minn. 282 [L. R. A. 1915D, 201, 149 N. W. 297].) As hereinbefore stated, the X-ray was not applied in this case for the purposes of treatment, but merely to ascertain the cause of plaintiff's headaches, and this was disclosed at the first examination. There is no room, therefore, for the application of any theory of mere honest mistake in the careful application of a treatment intended to be applied in the accomplishment of a result similar to the one produced but not to the extent thereof.

"'On the contrary, the X-ray was to be used only to discover a condition which was at once shown, and the many other exposures were not made in the interest of the patient, but for other purposes. Examinations, when carefully and properly made, do not produce burns; hence when a burn is produced, this fact is of itself some evidence from which the jury may find that the degree of care and skill ordinarily exercised by persons of like profession and using such agencies was not exercised in that particular case. (Citing authorities.) Of course, the rules governing the duty and liability of physicians and surgeons in the performance of·professional services are applicable to them in the use and

manipulation of an X-ray machine. (21 R. C. L. 386.)' *Holt* v. *Ten Broeck*, 134 Minn. 458 [Ann. Cas. 1918E, 256, 159 N. W. 1073], and cases therein cited, hold to the same effect.''

Following the conclusions of the Supreme Court in the foregoing case, we are of the opinion that there was some affirmative evidence on the trial of the instant case tending to support a finding that the injuries to plaintiff could not be attributed to latent and undiscovered defects in the X-ray apparatus, but were caused by the negligence of defendants, and that in any event, this case is one for the application of the doctrine of *res ipsa loquitur*.

This being a judgment of nonsuit, on defendants' motion at the close of plaintiff's evidence, without any rebutting evidence being introduced by the defendants, the testimony must be construed as strongly as possible, and every reasonable inference therefrom resolved in favor of the plaintiff.

The judgment of the trial court is reversed.

Barnard, J., and Marks, J., concurred.