## MARTIN v. ESCHELMAN.

### No. 3905.

Court of Civil Appeals of Texas. Texarkana.

Dec. 15, 1930.

Rehearing Denied Dec. 18, 1930.

Harry P. Lawther, of Dallas, for appellant.

McDonald & Anderson, of Wichita Falls, and Sullivan & Wilson, of Dallas, for appellee.

HODGES, J.

This suit was filed by the appellee against the appellant to recover damages for personal injuries resulting from an alleged X-ray burn.

The facts show that the appellant was a practicing physician in the city of Dallas, and

a specialist in the use of X-ray in the treatment of cancers, ulcers, and similar diseases. In November, 1927, the appellee was afflicted with a small ulcer under his chin on the left side, and applied to the appellant for treatment. The ulcer was diagnosed by the appellant as epithelioma, or skin cancer. The X-ray was applied by the appellant several times to the ulcer, the treatments occurring every other day. The last treatment was given to a small sore, or irritated spot, on the side of the appellee's neck near his left ear. A few days after this last treatment, small blisters and evidences of what seemed to be a burn appeared on the appellee's neck in the region of the last exposure to the X-ray.

That inflammatory condition grew worse and finally developed into a very painful and serious affliction, extending from a point a little above the lower part of the left ear to the collar bone.

In his suit the appellee alleges that this inflamed condition was the result of an X-ray burn inflicted through the negligence of the appellant in administering the X-ray treatments. He charges negligence generally and in the following respects:

"(a) That the said X-ray machine was out of repair and not properly attached at the times the defendant gave to plaintiff the said treatments heretofore alleged.

"(b) That defendants in operating said X-ray machine placed the same too close to the chin and shoulders of the plaintiff when the said treatments were administered.

"(c) That the said machine was allowed to remain and the said X-ray treatment was given plaintiff by defendants for too long a time.

"(d) That defendants did not use ordinary care to place a lead apron on and around the shoulder and parts of the chin of plaintiff that were not intended to receive said X-ray treatment; that such failure on the part of defendant was due to negligence and carelessness, and as a result thereof, plaintiff's shoulder, neck, chest, back of neck and of head, were severely burned by the said X-ray treatments.

"(e) That the electricity by which the said X-ray machine was operated, was turned on too suddenly and too strong, which caused an overdosage of electricity and fire, and was negligently permitted by defendants to remain for an unreasonable length of time, when said treatments were administered to the plaintiff.

"(f) That said defendants were careless, incompetent and negligent, and did not use ordinary care to attach said X-ray machine and the current proper distances and did not use ordinary care to see that said X-ray machine was being operated in such manner as not to burn the plaintiff. * * *"

Special interrogatories embracing those issues were submitted to the jury and answers favorable to the appellee were given to practically all of them. The jury also found that the plaintiff Eschelman received the X-ray burns complained of on parts of his body other than the two places treated; that the burn was caused by the negligence of Martin; and that such negligence was the proximate cause of the injuries from which the plaintiff was suffering. The jury assessed the appellee's damages at $9,500.

The principal complaint in this appeal is that the evidence does not support the findings of the jury. Each finding is attacked in a distinct assignment of error. There was a sharp conflict in the testimony of the principal witnesses. Eschelman testified:

"I went to Dr. Martin for treatment; he gave me seven treatments for this, six for this and one on the neck. Those treatments were every other day as stated except the last and there were two the same day. I don't remember whether it was $36.00 or not I paid him. I was as well a man as lived, never been sick in my life. I had no scars upon me anywhere when I went there. My recollection is he gave me this last treatment on Friday, and on Monday morning following at one o'clock this whole side of my neck was in a solid blister with yellow eruptions all over it. As to how that suffering affected me, it was just sleepless nights when it got bad and a great splotch across my shoulder here, deep red down to here on my arms. The bones were affected and the suffering became so intense there was a growth, a green scum. I went to the sanitarium and Dr. Lott and Dr. Shelmire decided they could do plastic surgery; they could skin the skin back and cut the tissues out that were affected and possibly get relief, draw the skin from this end, maybe cover the place. They did that but it was impossible. I stayed in the sanitarium two days.

"I had for about three or four weeks run a temperature; was in bed all the time. After this operation it fell apart. When it was sewed up instead of any primary union, it did not heal, it just fell apart. As to whether or not it still pains me, I never forget that I have it a minute in the world. About three months after this healed, in January, it broke out in this ear again. That was the second time it broke out; there is no treatment for it and there is no medicine I can find with the very best experts. A little oil or a little white vaseline is all I have used on it."

Dr. Shackleford testified for the appellee that the affliction from which the appellee was suffering was, in his opinion, the result of an X-ray burn. Dr. Shelmire, who was a

specialist in the treatment of skin diseases by the use of the X-ray, testified that, in his opinion, the plaintiff's affliction was caused by an X-ray burn. The defendant Martin testified at considerable length as to the manner in which he administered the treatments. According to his testimony, he used great care, not only in regulating the time of the exposures, the quantity of electricity applied, but in protecting from the exposure to the X-ray the skin and tissue surrounding the spots treated. He exhibited before the jury the machine he had used in those treatments and described in detail the manner in which the machine was manipulated in his treatments, as well as the precautions he took to prevent burning any healthy tissue surrounding the diseased portions he treated. If his testimony be true, it was impossible for an X-ray burn to occur.

Other physicians familiar with the use of the X-ray machine testified in behalf of the appellant that Dr. Martin ranked among the best of the specialists in his line, and that if he applied the X-ray in the manner stated by him, it was practically impossible for the burn to occur outside of the area that was actually being treated. They approved of the manner in which he said he had protected the surrounding portions of the patient's face and neck.

The controlling questions seem to be: (1) Was the injury from which the appellee was suffering the result of an X-ray burn? And (2) if it was, did it result from the treatment given by the appellant? According to the testimony of the appellee and his witnesses, the jury had a right to conclude, as they did, that the affliction from which the appellee was suffering was the result of an X-ray burn. The jury also had a right to conclude that this burn was caused by the manner in which the appellee was treated by the appellant. There seems to be little dispute in the fact that if the injury was caused by an X-ray burn while under the treatment of the appellant, it was the result of negligence in the manner in which the treatment was administered. The case is one in which there is a conflict in the evidence. It was the province of the jury to pass upon the credibility of the witnesses, and the weight to be given to their testimony.

The state of the evidence is such that this court does not feel warranted in setting aside the findings of the jury. The judgment will be affirmed.

### On Motion for Rehearing.

Counsel for appellant complains of a statement made in the original opinion that the controlling issue in this case was decided by the jury upon conflicting testimony. It is insisted that the case is one where the evidence is wholly insufficient to support the findings of the jury, and that a peremptory instruction should have been given in favor of the appellant.

As the plaintiff in the case, the appellee was required to prove the following facts: (1) That his injuries were the result of an X-ray burn; (2) that this burn was caused by the treatment administered by the appellant; and (3) that the burn was due to the negligence of the appellant.

Drs. Shelmire and Shackleford both testified that appellee's injuries were caused by an X-ray burn. The appellant testified that they were not. In passing upon the conflict thus presented in the testimony, the jury accepted as true the testimony of Drs. Shelmire and Shackleford and found that appellee's injuries were the result of an X-ray burn.

The next question is: Who caused that burn? The undisputed facts show that the appellee had been treated six times by the appellant by the use of an X-ray machine a few days before the evidences of the burn appeared. Appellee testified that no one except the appellant had treated him with such a machine. That, in effect, meant that there was no possibility of an X-ray burn from any other source. While he admitted the treatments, appellant stated that under the method adopted by him there could have been no burn except upon the small area, about three-fourths of an inch in diameter, which was under treatment. The jury concluded from that state of the evidence that the burn was caused by the appellant.

The third question is: Was the burn the result of negligence on the part of the appellant in giving those treatments? There is nothing in the testimony of the appellee tending to show negligence in the treatments, unless it be in what he said about the character of his injuries, and the method adopted by the appellant to protect the untreated portions of his face and neck. The appellant, who was an expert in the use of X-ray machines, testified:

"I say I did not burn him. I don't know who else treated him at any time. During those six treatments in my office no one except myself operated that machine or did anything to him. No one else in my office could have burned him. It couldn't have happened. If it was done in my office certainly I did it. If I had done it, it would have been negligence and I would have known it. The time of its showing up after treatment varies from six to ten days. The only way I know he did not get burned in the office is because I know it was a physical impossibility, because of the manner in which the treatment was applied. We had a heavy brass cone under the tube, and there is a little hole through a place of the cone which came down on the tissue."

In addition to what the appellant here says, we have the fact of an injury—an X-ray burn over an area that was not under treatment and which the jury might have concluded should have been protected from exposure to the light in the X-ray tube.

■■ But it is strenuously insisted that the doctrine res ipsa loquitur has no application to cases of this character. It may be that no inference of negligence can be drawn from the mere fact that the parts necessarily exposed for treatment are burned. But here we have a situation, according to the evidence, where a burn has appeared over a much larger area than that which was being treated. We think that fact is a circumstance which the jury had a right to consider in connection with the other testimony in determining whether or not the appellant was negligent in not using the proper covering to prevent the exposure of the untreated portions of the appellee's neck. It is not contended that such protection was impossible or that the parts now showing evidences of the burn were necessarily exposed to the light of the machine. There is eminent authority to sustain that view of the case. Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Shockley v. Tucker, 127 Iowa, 456, 103 N. W. 360; Moore v. Steen, 102 Cal. App. 723, 283 P. 833 and cases there cited.

Among the special issues submitted, there are three in which the jury was required to pass upon the general negligence alleged in the petition. The questions were:

(1). "Do you find and believe from a preponderance of the evidence that the plaintiff Ed Eschelman received any X-ray burns complained of on the parts of his body other than the two parts treated by the defendant, Dr. J. M. Martin? Answer: Yes."

(2). "Do you find and believe from a preponderance of the evidence that such X-ray burns to other than those treated parts were caused by the negligence, if any, as that term has been defined to you herein, upon the part of the defendant, Dr. J. M. Martin? Answer: Yes."

In answering the third question, the jury found that such negligence was a proximate cause of the injuries sustained by the plaintiff. Those answers were, we think, supported by the evidence and are sufficient to furnish a basis for a judgment in favor of the appellee for whatever damages the jury may have found that he sustained by reason of the appellant's treatment. It is immaterial that there was no direct testimony sufficient to support any of the other special issues involving specific acts of negligence.

The motion will be overruled.