### HESS v. MILLSAP et al.
### No. 7977.

Court of Civil Appeals of Texas. Austin.
May 30, 1934.

924

Wright & Tupper, of San Angelo, for appellant.

Collins, Jackson, & Snodgrass, of San Angelo, for appellees.

BLAIR, Justice.

Noah Millsap, next friend of his minor daughter, appellee Lela Viola Millsap, sued appellant, D. L. Hess, a practicing physician, for damages occasioned by his negligent operation of an X-ray machine, and careless X-ray treatment administered to appellee's head while treating her for favus, causing an X-ray burn, which resulted in permanent baldness of most of her head. Appellant's defense was that he did not burn appellee, but that the disease itself caused her baldness. The jury found that appellant negligently burned appellee's head with the X-ray treatments, causing her baldness, and assessed $1,800 as damages.

The principal question presented is whether there was sufficient evidence adduced to support the jury's findings that appellant negligently burned appellee's head with the X-ray treatments, causing her baldness. He contends that since he alone testified to the correctness of the dosage and the manner of giving the treatments, and that such were proper from the standpoint of approved X-ray practice, and that since the doctrine of res ipsa loquitur does not apply to X-ray cases, no issue was left for the jury to decide.

The maxim of res ipsa loquitur is not involved in this case, and the evidence sufficiently supports the jury's findings. It is as follows:

Appellee had a small sore on the crown of her head, which appellant diagnosed as favus, and administered three X-ray treatments to her head. He testified that the time factor was the only one that varied in the three treatments; that the first treatment was for five minutes on the sore spot; the second treatment was for five minutes each on five different areas in the region of the sore spot; and that the third treatment was for eight minutes on the sore spot. Appellant and other experts in X-ray treatment testified that this was the proper method of X-ray treatment. They further testified that X-ray exposures for a longer period of time than those given would have resulted in an X-ray burn or X-ray reaction. Appellee's parents, who accompanied her at the time of each treatment, testified that in their judgment the first treatment was from fifteen to thirty minutes; that the second treatment was for one hour and a half; and that the third treatment was

for a longer period of time than eight minutes. After the second exposure or treatment appellee's head began to turn red and broke out in blisters; and on her return to appellant he said, "We got a good burn on it that time." Her head then became as "a piece of raw meat," and continued so for several months, causing her great pain, and in the end sloughed off to the bone, leaving her bald. The testimony of the experts conflicted somewhat as to whether favus would cause complete baldness. Some testified that in extreme cases it would; while another testified that only the immediate hair involved would die, and a small bald place or pit would be left. He further testified that favus would not cause complete baldness; and upon an examination of appellee's head before the jury, he testified that her baldness was caused from a burn; and that all of the skin and tissues down to the bone were destroyed, and that she would be permanently bald.

Appellant testified that if the X-ray were properly applied, no injurious results would follow; that the hair could be removed with the X-ray, but that it would return, if the X-ray were properly applied. The testimony also shows that the scalp was not only burned on the crown where the sore was located, but the entire area to which appellant and the parents of appellee testified that the X-ray treatments were applied. Appellee's head was entirely bald, except around the edges, where she had a fringe of healthy hair. No sign of favus appeared on her head, according to one of the experts, but that the entire cushion between the outer skin and the scalp over the bald area had been destroyed by something which appeared to be a burn. All the experts agreed that exposure for too long a time to an X-ray treatment would cause X-ray burns, which would be evidenced by open sores and by destruction of the skin and tissues down to the bone. Appellee's burn ran this course. Under this evidence it was clearly a question for the jury to determine whether the injuries were caused from appellant's negligently exposing her head for too long a period of time to the X-ray. They so found, and their finding concludes the question.

A case involving the doctrine of res ipsa loquitur might have been presented if the correctness of the factors of dosage and manner of treatment as testified to by appellant had not been disputed. But such is not the instant case. Both of appellee's parents testified to seeing longer exposures or treatments than appellant testified to. All experts agreed that exposure to X-ray for too long a period of time, or for a longer period than appellant testified he administered to appellee, would result in X-ray burn; and that blisters, open sores, falling of the hair, redness of the skin, and sloughing off of the skin and tissues were evidences of such a burn. These evidences of X-ray burn appeared after the second treatment of appellee, and such was the history of her case. The case, therefore, turns upon the lay questions of the manner of treatment actually administered, and whether the external appearances which experts testified evidenced an X-ray burn were there. The evidence as to these matters was conflicting, and therefore presented the issue for the jury to decide as to whether appellant negligently exposed appellee's head to X-rays in such manner as to burn her head and scalp, causing her baldness. Hess v. Rouse (Tex. Civ. App.) 22 S.W.(2d) 1077; Blair v. Bartlett, 75 N. Y. 150, 31 Am. Rep. 455; 49 A. L. R. 553.

■■ It is contended that the court erred in permitting a picture from a medical textbook to be exhibited to the jury as a method of testing the weight to be given the testimony of an expert witness called by appellant. The witness testified that one might have complete or splotched baldness as the result of favus infection, owing to the extent or severity of the infection; and that the straight lines of demarkation of the bald and hairy portions of appellee's head were a mere coincidence, in that the infection of hair follicles happened to stop at the straight lines. On cross-examination the witness testified that a certain text-book on X-ray was regarded as standard authority. He was shown a picture in the text-book as being typical of baldness caused by favus infection, which he said showed a moderate infection, because the patient had hair scattered over his head. Over objection, the picture was exhibited to and inspected by the jury.

The rule is settled that the knowledge and qualification of the witness as an expert may be tested as against accepted authorities upon the subject testified about. Texas & P. Ry. Co. v. Hancock (Tex. Civ. App.) 59 S.W. (2d) 313 (writ refused); Cisco & N. E. Ry. Co. v. Proctor (Tex. Civ. App.) 272 S. W. 308; Ft. Worth & R. G. Ry. Co. v. Woodward (Tex. Civ. App.) 254 S. W. 227 (writ refused); G. C. & S. F. Ry. Co. v. Dooley, 62 Tex. Civ. App. 345, 131 S. W. 831. The same rule should apply to a picture as to the written text. Appellant contends that the written text is never introduced in evidence, but that it is merely read as the basis for the interrogation of

the witness. The picture cannot be read. It might be described, and was described by the witness, as showing "a moderate infection, because he has hair scattered over his scalp." The introduction of the picture showed no more, and since the witness then explained that the text "does not say severe," and that "it is a moderate infection," we do not see how the introduction of the picture could have harmed appellant. With that explanation, the picture was in exact harmony with the views of the witness; and there was nothing in the picture or text to refute the explanation given by the witness. Therefore, no harm could have been done by introducing the picture, if error to do so.

■ A question propounded by appellee's counsel to Dr. J. S. Hixson was: "Have you heard the question of the ability and carefulness of Dr. D. L. Hess in the handling of his X-ray discussed among the physicians of San Angelo?" Appellant objected, on the ground "it is immaterial, and we save an exception to the question being asked." The court sustained the objection; and no request was made to instruct the jury to disregard the question, or to declare a mistrial. The mere asking of the question does not present reversible error under the rule announced in the case of El Paso Electric Co. v. Whitenack (Tex. Civ. App.) 297 S. W. 258, 260, affirmed (Tex. Com. App.) 1 S.W.(2d) 594, where it is held that: "The question asked the witness was wholly improper, was not the proper method of impeaching a witness, but the question itself, unanswered, does not present reversible error."

■ For the same reason the asking of the question, "Did the State Medical Association come to your aid when somebody sued you for burning somebody?" does not present reversible error. Objection was made, sustained, and the question not answered.

■ Counsel for appellee stated to the jury in argument of the case that appellant objected to appellee's proving that the State Medical Association had offered to help Dr. Martin, a witness for appellant, in a similar case. The court refused to instruct the jury to disregard the statement of counsel, upon the ground that counsel for appellant had invited the statement by improper argument to the jury to the effect that Dr. Martin was recognized as an authority throughout the world, and a man of eminent standing in his profession; that the State Medical Association was an association of leading doctors; and that said association would not have sent Dr. Martin without investigating the case. None of these facts was supported by evidence. In reply counsel for appellee called attention to these unauthorized statements, and that counsel for appellant had objected to his witness telling whether the Medical Association had ever aided him. Manifestly the alleged improper argument was invited by appellant's counsel, and was in answer to his improper argument.

■■ Likewise, the alleged improper argument of counsel for appellee, as to what any San Angelo physicians may have told him they would swear, was directly invited by the improper argument of counsel for appellant to the effect that San Angelo was full of doctors of probably more learning and skill than the "little goose grease man from Big Springs." He referred to the only expert witness called by appellee. The record showed him to be as well qualified as the other experts who testified in the case. There was no evidence as to how many doctors there were in San Angelo, nor why they did not testify in the case. The rule as to improper argument ought to work both ways. It should not be permitted at any time, but when one counsel persists in making improper argument in a case, he cannot complain because opposing counsel made improper argument in reply thereto, or in following the other out of the record.

■ Since the special issues submitted by the court covered the entire case, the special issues requested by appellant covering the same matters need not have again been submitted.

■ There was sufficient evidence that appellee would suffer physical discomfort in the future because of her baldness, and the trial court did not err in submitting such discomfort as an element of the damages suffered by appellee.

The judgment of the trial court will be affirmed.

Affirmed.