Richard W. GORSALITZ et ux., Appellants,

v.

Dr. G. G. HARRIS, Appellee.

No. 13978.

Court of Civil Appeals of Texas.

Houston.

Sept. 20, 1962.

Rehearing Denied Oct. 11, 1962.

John H. Holloway, Houston, for appellants.

Joe Kegans, Fulbright, Crooker, Freeman, Bates & Jaworski, Quentin Bates, Houston, for appellee.

WERLEIN, Justice.

Appellants, Richard W. Gorsalitz and wife, brought this suit against Dr. G. G. Harris, a dentist, to recover damages for personal injuries allegedly sustained by Mrs.

Gorsalitz and proximately caused by appellee's negligence in connection with the extraction of her upper right first molar and post-operative treatment thereof. At the conclusion of appellants' evidence, the court on motion of appellee instructed a verdict in favor of appellee, and entered judgment thereon that appellants take nothing.

It is necessary to review briefly the evidence in an effort to determine whether appellants alleged and established acts or omissions of negligence on the part of appellee proximately causing injury to Mrs. Gorsalitz. Mrs. Gorsalitz testified that appellee in extracting her tooth on July 14, 1958 broke the tooth; that after probing around in the cavity and extracting three little pieces, appellee took an x-ray and stated he had it all; that he sewed up the wound and advised her to use a salt rinse and return in a week; that when she returned he postponed removal of the stitches for another week; that when she went back three weeks from the date of the extraction he said that it hadn't healed up but he would go ahead and remove the stitches because if it hadn't healed in three weeks, it wasn't going to heal; and that the swelling in her jaw gradually went down after the stitches were removed.

She further testified that in September, 1959, she started having trouble and went to another dentist, Dr. Henry Rosenbloom, who took x-rays showing a tooth root tip in her jaw; that she then called on appellee and showed him the x-ray; that appellee removed the root tip; that about three weeks after he removed the root tip he took the stitches out; that he informed her there was a hole that had not closed, and told her to see an oral surgeon; that she then saw one Dr. McKay, general practitioner, who gave her penicillin shots, and referred her to Dr. C. Amberson Curl, who x-rayed her jaw and sent her to the Medical Arts Hospital where on October 13, 1959 an operation was performed to effect a closure of the hole at the base of the sinus. The stitches were removed three weeks thereafter.

The three dentists who testified: appellee, Dr. Curl and Dr. Rosenbloom, were all from the same school of dentistry. Appellee admitted that the root tip that was removed by him came either from the tooth which he had extracted or from a tooth extracted some years before by a dental surgeon in Washington, D. C. Dr. Rosenbloom testified positively that the root tip in question was from the first upper right molar, which had been extracted by Dr. Harris, and that the x-ray showed it was right next to the second molar. Appellee testified that when Mrs. Gorsalitz first came to him, she had a generalized infection around the tooth in question and all the remaining teeth; that in extracting the tooth he found that the floor of the sinus was fused to two of the three roots of the upper molar, and in pulling the tooth a part of the floor of the sinus or antrum to which the roots were fused came out and the sinus was completely exposed through the socket; that he told Mrs. Gorsalitz that he had torn part of the "roof" of the sinus away; that the root tip was a type of foreign matter which he definitely would not want to put into a sinus cavity, and that if it were injected into the sinus cavity there was probably a 50% chance that nothing would occur, but also a 50% chance that it would cause chronic sinusitis or sinus infection or a continuance of an infection.

Appellee further testified that he took an x-ray of the cavity or socket after extracting the tooth and before probing therein; that his x-ray did not show the root tip; that the three prongs were intact on the tooth when extracted and it was not broken and all bone came out with it; that the extraction was not a normal one due to the fusion of two of the roots to the floor of the sinus, but that while unusual, it was not out of the ordinary in such case for a part of the floor of the sinus to come out; that in extracting the tooth he also pulled out about one inch of the membrane from within the sinus cavity; that from medical standards of his profession the leaving of a root tip or a foreign unattached body in the

gum or sinus area without referral to an oral surgeon would be lack of due care; that it would be careless for a doctor of dentistry such as he not to ascertain that all of the fragments of an extracted tooth had been removed before releasing the patient from his office unless released to go to another dentist or oral surgeon; that after the extraction on July 14, 1958, when Mrs. Gorsalitz came back for post-operative examination she had a cold and her sinus had reopened and he referred her to Dr. Curl and gave her an antibiotic prescription to have filled; that he didn't remember whether the hole was still open when she came back on August 6, 1958; that it was obvious she didn't go to Dr. Curl since she didn't tell him about it; and that the root tip was removed by him on September 18, 1959 from the same socket from which he had removed the molar. No charge was made for its removal.

Appellants introduced an exhibit in the handwriting of appellee consisting of a certificate for Hughes Tool Company, dated October 15, 1959, in which was written: "Root tip from previous extraction entered sinus opening of affected area. Removed and tissue closure again attempted 9/14/59 —unsuccessful. Needs closure by oral surgeon."

Dr. Curl testified in substance that when Mrs. Gorsalitz came to him on September 30, 1959 she had a hole in the antrum which needed to be closed; that such hole was probably large enough for the root tip in question to be induced into the sinus cavity; that if a closure does not follow the extraction within two weeks, a normal dentist would have some suspicion that something might be wrong and refer the patient to an oral surgeon or an ear, nose and throat man if the cause was a root tip; that in the case of Mrs. Gorsalitz an infection kept the hole from closing; that he felt the failure to close was the result of generalized sinusitis but that he couldn't tell what caused the infection; that it could have resulted from bacteria in the air; that a root tip could cause it and could be a contributing

factor; that it would be a want of care on the part of a dentist not to advise the patient that the sinus cavity had been opened by a tooth extraction; that it would be lack of care if he failed to tell the patient that part or all of the membrane had come out of the sinus cavity with the extraction; that if the dentist has some question in his mind whether he is competent to do a closure, it would be lack of ordinary care on his part not to send the patient on his first occasion to a qualified oral surgeon; that if a root tip is broken off a molar, he would not probe the socket before making an x-ray if he couldn't see the root tip; that it would not be ordinary care to probe first and would be a violation of general dentistry practice; that it would be careless to probe if you knew that the cavity had been opened by the extraction, and would be more careless to probe without an x-ray; and that the operation in October, 1959 was the same type he would have performed in August or September, 1958, a month or two after the extraction.

Dr. Curl testified further, as follows:

"Q Doctor, it not only reasonably probably could have contributed to it, but the requirment of taking it out was a contributing cause, wasn't it?

"A It may or may not have been, sir. I don't know how hard it was to get out.

"Q I am saying that the opening back up of that cavity to take the tip out was one of the reasons that it was necessary to close it, wasn't it? When you did effect the closure?

"A It could have contributed thereto."

In viewing the evidence most favorably from the standpoint of appellants, we have concluded that there are fact issues in the case with respect to negligence on the part of appellee. Indeed, appellee's counsel, while not conceding negligence on the part of appellee, has not undertaken in his brief to contend seriously that there are

not fact issues in the case which would warrant findings of negligence. Appellee contends, however, that appellants have failed to establish that any act of negligence on his part was a proximate cause of damage to appellants.

After a very careful study of the record, we have concluded that appellee's contention must be sustained. Mrs. Gorsalitz testified that the swelling of her jaw went down the next week after removal of the stitches following the extraction of her tooth in 1958. She continued to work, suffered no pain, had no trouble with her sinuses from the root tip, and was not bothered in any way whatever. In September, 1959, more than a year later, she started having trouble and went to Dr. Rosenbloom to get an estimate on a dental plate. Dr. Rosenbloom took x-rays preliminary to doing the work and discovered that one of the x-rays showed the root tip in the socket of the first molar and right next to the second molar. At such time she had an infection and abscess. There is no medical testimony that such condition was probably caused by the root tip. The medical evidence at best shows that the root tip could have caused or contributed to the infection and the necessity for an operation to effect a closure and the alleged injury and expense resulting therefrom. It was not shown that the root tip, whether in the sinus or in the socket next to the second molar, probably kept the floor of the sinus open and necessitated the operation to effect a closure. Dr. Harris testified that in 50% of the cases a root tip in the sinus would not cause any trouble at all. The testimony of Mrs. Gorsalitz shows that for more than a year after the stitches were removed following the extraction she had no sinus trouble or trouble of any kind. The medical evidence shows also that an infection such as she had which kept open the hole in the floor of the sinus could have resulted from causes other than a root tip.

It seems clear that under the authorities in this State it is necessary for a plaintiff, in order to recover against a doctor or dentist in a malpractice suit, to show that the injury or condition was probably caused by some negligent act or omission on the part of the doctor or dentist and not merely that such negligent act or omission could or might have caused the injury or condition. In Bowles v. Bourdon, Tex.1949, 219 S.W. 2d 779, the court stated:

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries." In that case the evidence showed that if there was negligence it was only a possible and not a probable cause of the injury. The court quoted with approval the language of Circuit Judge Taft in Ewing et al. v. Goode, 6 Cir., 78 F. 442, 444, as follows:

"'* * * when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury.'"

The court also quoted with approval the following language from Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 498: "The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof."

See also Kaster v. Woodson, Tex.Civ. App., 123 S.W.2d 981, writ ref., in which the court said:

"So, without medical testimony as to the probable cause of an infection or its source, the court and jury are not qualified to pass upon the question. The mere fact that infection set up in

**578**

appellant's arm three or four days after a hypodermic needle was injected will not suffice as proof that the physician, or his nurse who gave the injection, was negligent in failing to sterilize the needle or skin of appellant's arm before the injection. Infection comes from many sources, and there must be affirmative proof of such negligence or lack of care, and that the injuries complained of resulted therefrom; * *."

See also Giesenschlag v. Valenta, Tex. Civ.App., 225 S.W.2d 914, writ ref., n. r. e.; Devereaux v. Smith, Tex.Civ.App., 213 S. W.2d 170, writ ref., n. r. e.; Barker v. Heaney, Tex.Civ.App., 82 S.W.2d 417, writ dism.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

In their amended motion for rehearing appellants have called our attention to certain fact issues which we failed to consider in the foregoing opinion. There is ample evidence raising a fact issue as to whether the leaving of the root tip in Mrs. Gorsalitz's gum or sinus constituted negligence on the part of appellee. We adhere to our original opinion that there is no medical testimony that any such negligence probably caused the conditions necessitating the closure of the sinus cavity and the damages resulting therefrom. On reviewing the record we have concluded, however, that there is testimony which would warrant findings that such negligence, if any, necessitated the operation to remove the root tip and was a proximate cause of damages resulting therefrom.

There is evidence that in removing the root tip, appellee made an incision in Mrs. Gorsalitz's gum and then sewed it up, and that she was in appellee's office some 45 minutes to an hour and had to return three times before the stitches were removed. After the stitches were removed she was advised to see an oral surgeon to effect a closure of the sinus cavity. It is a matter of common knowledge that the operation for extraction of the root tip necessarily caused some pain or suffering, both physically and mentally. Houston Clinic v. Busch, Tex.Civ.App., 64 S.W.2d 1103, writ dism.

Since the case will have to be retried, we think it will serve no useful purpose to discuss the evidence further. The motion for rehearing is granted and the cause is reversed and remanded for new trial.