**J. D. HARLE, Appellant,**

v.

**George J. KRCHNAK, Appellee.**

No. 15108.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Oct. 5, 1967.

On Rehearing Dec. 14, 1967.

Further Rehearing Denied Jan. 4, 1968.

A. J. Watkins, Watkins, Ryan & Hamilton, Houston, of counsel, for appellant.

Arthur Stamm, Jr., Oldham & Lorance, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is an appeal from a judgment for the plaintiff entered in a medical malpractice suit. The trial court found that the facts establishing liability were undisputed and submitted only an issue on damages. The defendant objected to the charge on various grounds, including the failure of the court to submit issues on negligence and proximate cause.

Appellee was kicked in the chest by a horse. He was hospitalized for a week and released. About a month later he appeared at the emergency room of the Bellville Hospital in poor condition. He was seen there by Dr. Roensch, who admitted him to the hospital. After a day or two he asked Dr. Harle, appellant, to see the patient. Dr. Harle made a diagnosis of a delayed rupture of the spleen and advised an immediate operation. Most of Dr. Harle's practice is surgery, which is usually performed at the Bellville Hospital with the same group of hospital personnel and other physicians involved in the surgery on appellee. Dr. Harle is a qualified surgeon, who has performed some 3,000 cases of surgery. Had surgery not been performed, appellee would have died.

The surgery was performed between the hours of 3:45 and 6:10 p. m. on December 28, 1963. Dr. Harle was assisted by Dr. Roensch and Dr. Neely, the anesthesiologist, together with hospital personnel consisting of two registered nurses and a

licensed vocational nurse. Appellant made an incision from a point underneath the left rib cage at an angle to the midline, at the front of appellee's abdomen. Upon entering the abdonminal cavity he found it filled with old and partly coagulated blood. It was necessary to remove this blood by hand at first. He then used a suction machine, and finally sponges. At first "lap" sponges, designed to soak up blood and about the size of wash cloths, but thinner, were used. These sponges are also used to pack away abdominal contents to give the surgeon an area of exposure. He also used smaller sponges called "four by fours," which were folded up in a ring forcep, an instrument designed to hold these little sponges.

Appellant testified that the situation was in the nature of an emergency and highly unusual. While the number of sponges used was not recorded, he estimated that a total of between eight and twelve dozen were required, while in an ordinary operation, such as the removal of a gall bladder, only about three lap sponges and a dozen or two small sponges are used.

A large amount of blood is encountered in cases of delayed rupture of the spleen. The spleen is enclosed in a tough membrane. In this case the force of the kick received by appellee ruptured the spleen causing bleeding, but did not tear the membrane. Finally the pressure of the blood inside the membrane caused it to tear and the blood dropped into the abdominal cavity. This was an unusual case because the rupture of the membrane occurred after three weeks, whereas it ordinarily occurs within seven to ten days. Appellee was given three pints of blood by transfusion.

Appellant testified that ordinarily when a blood vessel is cut, the bleeding can be controlled by clamping it off with a hemostat. In this case the spleen adhered to the diaphram. When it was removed, capillary oozing occurred and it was necessary to pack the bed of the spleen. However, it was not necessary to leave a sponge there. During the operation the bleeding was controlled satisfactorily.

A running count of the sponges is kept during the operation, but as appellant saw that he was getting close to the time to start closing the peritoneum lining, he indicated to the scrub nurse that he was getting ready to close and wanted a sponge count. She then notified the circulating nurse that she was ready for a sponge count. The scrub nurse counts the sponges on the table and knows how many she started with. The circulating nurse counts the sponges that have been used. They compared their figures and notified appellant that the count was correct. He relied on their count, although he testified that he did make a visual examination of the site and saw no sponge. Surgeons customarily rely on the sponge count made by the nurses and it is impractical for the operating surgeon to count the sponges personally.

After receiving the sponge count, appellant closed the incision. The operation was successful and the patient was removed to his room. Because of the unusually large number of sponges used, the nurses recounted the sponges and found one missing. When appellant was informed of this fact, he concluded that leaving the sponge in the patient an additional twelve hours would do him no harm, and because of the blood loss it would be advisable to wait to check the status of his circulatory system and to permit recovery from the surgery. The next morning he determined that it would do no harm to go back and remove the sponge. He told appellee that the sponge was missing and located it by means of x-ray. After securing appellee's permission, he was taken to the operating room and given a general anesthetic. Appellant then removed enough stitches to permit him to insert his fingers and part of his hand and pull out the sponge. It was one of the lap sponges, which are 8″ to 10″ by 4″ to 5″, consisting of several thicknesses of cheesecloth. The incision was then reclosed. This entire procedure

took about 45 minutes. Appellee thereafter had a good recovery.

Appellant testified that the procedure required for the removal of the sponge did not delay the healing process at all and did not contribute to any ultimate disability. He testified that it is ordinarily safe to resume almost any kind of occupation after three months from surgery such as this, but that the patient would be uncomfortable for periods up to a year. He testified with reference to appellee: " * * The most I could say that he was uncomfortable twelve hours longer than he would have ordinarily been." He further testified that he required hypos three days after the first operation, which was very good time, and that the second operation did not delay him in returning to work or affect his long term picture at all. He testified that if he had waited several days before removing the sponge, the hospital stay would have been prolonged by that number of days.

Appellee testified that he did not feel pain immediately following the operations, but that he did about a day or two later, and that he became sick and vomited after the second operation. He testified that he has continued to have pain; that when he eats he gets a pain in his side. "It just seems to be a hard knot. It just swells up in my side." He hasn't consulted any doctors about this condition. He offered no expert medical testimony at the trial other than the cross-examination of appellant.

Appellee remained in the hospital nine or ten days, a relatively short period of time for surgery of this type. No charge was made for the second operation. Appellant testified that he would expect that appellee would have remained in the hospital about as long without the second operation, " * * * possibly at most he stayed fourteen hours longer than he would have."

The failure of the trial court to submit issues on negligence and proximate cause may well have been based on certain language found in Moore v. Ivey, 264 S.W. 283 (Tex.Civ.App.—Galveston, 1924), reversed on other grounds Tex.Com.App., 277 S.W. 106. This case was submitted to a jury and findings were secured that the doctor was negligent in failing to remove a sponge before closing an incision, and that this failure was a proximate cause of injury to the patient. In answer to assignments of error challenging the sufficiency of the evidence to support the answers made by the jury, the court said: "Since the jury has found upon sufficient evidence that Dr. Moore left the sponge in Mrs. Ivey, we think that a further finding that such act constituted negligence on the part of Dr. Moore necessarily follows."

This language was considered in Thompson v. Barnard, 142 S.W.2d 238 (Tex.Civ. App.—Waco, 1940), aff'd Barnard v. Thompson, 138 Tex. 277, 158 S.W.2d 486 (1942), where the court of civil appeals cited the case in support of this statement: " * * * While there are decisions to the contrary, the apparent weight of authority is that a surgeon's failure to remove a sponge before closing the incision is negligence as a matter of law." This statement was not necessary to the decision in this case since it had not been tried on its merits, but had been dismissed as being barred by limitation.

The passage from Ruling Case Law quoted in Moore v. Ivey, supra, in support of the decision is incomplete as is indicated in the opinion. The wording deleted from the quotation reads: "Whether the particular act was negligent is for the jury to decide after considering the circumstances of the case." See Spears v. McKinnon, 1925, 168 Ark. 357, 270 S.W. 524. If this court decided in Moore v. Ivey that the fact a surgeon fails to remove a sponge before closing an incision establishes negligence as a matter of law, we think the decision clearly contrary to the great weight of authority in the United States. Anno. 10 A.L.R.3d 9, Malpractice, Foreign Objects; Anno. 82 A.L.R.2d 1262,

Malpractice, Res Ipsa Loquitur; Anno. 65 A.L.R. 1023, Surgical Operation, Malpractice.

It appears that the evidence stated in the opinion is sufficient to support the findings of fact made by the jury in Moore v. Ivey. It was not necessary for the court to reach the conclusion that negligence appeared as a matter of law in order to support the decision in view of the jury verdict.

Appellant testified that the sponge was left in appellee's body by mistake. The testimony shows that he relied on his visual inspection and the nurses' count. The jury might believe that his failure to see the sponge was excusable because of the large amount of blood encountered. It might find that he was justified in relying on the nurses to properly count the sponges under the circumstances of this case. An issue on negligence should have been submitted to the jury. Martin v. Eschelman, 33 S.W.2d 827 (Tex.Civ.App., Texarkana, 1930, error ref.); Note, 38 Michigan Law Review 560; Note, Wisconsin Law Review, 1964, p. 133; Note, 1 Baylor Law Review, p. 224; Note, 24 Texas Law Review, p. 515.

It is well established in Texas that the plaintiff in a malpractice case must prove that the injury of which he is complaining was proximately caused by the negligent act of the physician or surgeon. Ordinarily this requires expert testimony. Thomas v. Beckering, 391 S.W.2d 771 (Tex.Civ.App., Tyler, 1965, ref., n. r. e.). While it seems evident that appellee's pain and suffering was extended for a period of fourteen hours and that this was proximately caused by the necessity for the second operation, appellant's testimony is such as to create a question of fact for the jury. Gorsalitz v. Harris, 360 S.W.2d 574 (Tex.Civ.App., Houston, 1962); Henderson v. Mason, 386 S.W.2d 879 (Tex.Civ.App., El Paso, 1964).

Appellant questions whether he could be held in damages for the conduct of the nurses in making an incorrect count of the sponges even though such conduct should be held negligence. It appears that most jurisdictions in this country hold the operating surgeon liable for the negligence of the nurses assisting him in the operation. McKinney v. Tromly, 386 S.W.2d 564, 12 A.L.R.3d 1011 (Tex.Civ.App., Tyler, 1964, ref., n. r. e.); Insurance Counsel Journal, Vol. 27, Captain of the Ship, p. 156 et seq.

Appellant urges that this Court should reverse the judgment of the trial court and here render a judgment that the appellee take nothing. This position is based on the proposition that no issues on liability were requested or submitted and as a consequence under Rule 279, Texas Rules of Civil Procedure, all grounds for recovery have been waived.

Appellee and the trial court relied on Moore v. Ivey, a case decided by this Court. We have disagreed with the interpretation widely given to the holding in this case. Under the circumstances we think justice will be better served by remanding the case for another trial as authorized by Rule 434, T.R.C.P. London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619 (1944).

Reversed and remanded.

On Motion for Rehearing

In view of the motion for rehearing filed and the brief of Amicus Curiae in support thereof, the Court has carefully reconsidered its original opinion.

The general rule applicable to cases of medical malpractice is well settled in Texas. The law presumes that the physician has done his work properly. The plaintiff can recover only when it can be affirmatively shown that the diagnosis or treatment was not an error in judgment but a matter of negligence, and that such negligence was the proximate cause of the damages claimed by the plaintiff. Henderson v. Mason, 386 S.W.2d 879 (Tex.Civ. App., El Paso 1964, n. w. h.). Ordinarily both negligence and proximate cause must

be proven by medical testimony. Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 (1949).

■ An exception to this rule has been recognized where the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, as where the negligence alleged is in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body. In such cases the requirement of medical testimony is eliminated, but the necessity of proof of negligence remains. Bell v. Umstattd, 401 S.W.2d 306 (Tex.Civ.App., Austin 1966, writ dism.); Henderson v. Mason, supra; Dobbins v. Gardner, 377 S.W.2d 665 (Tex.Civ.App., Houston 1964, writ. ref., n. r. e.); Gorsalitz v. Harris, 360 S.W.2d 574 (Tex.Civ.App., Houston 1962, n. w. h.); Edwards v. West Texas Hospital, 89 S.W.2d 801 (Tex.Civ.App., Amarillo 1935, writ dism.); Hess v. Millsap, 72 S.W.2d 923 (Tex.Civ.App., Austin 1934); Martin v. Eschelman, 33 S.W.2d 827 (Tex.Civ.App., Texarkana 1930, writ ref.).

■ The doctrine of res ipsa loquitur is generally held by Texas courts to be inapplicable to medical malpractice cases. Bell v. Umstattd, supra; Shockley v. Payne, 348 S.W.2d 775 (Tex.Civ.App., Amarillo 1961, ref., n. r. e.); Hess v. Millsap, supra; Barker v. Heaney, 82 S.W.2d 417 (Tex. Civ.App., San Antonio 1935, error dism.). But see Martin v. Eschelman, 33 S.W.2d 827 (Tex.Civ.App., Texarkana 1930, writ ref.).

A rule of absolute liability in cases of this sort would be much more drastic than the rule of res ipsa loquitur, which merely makes the question one for the jury. Dietze v. King, 184 F.Supp. 944 (E.D.Va.1960); Jackson v. Hansard, 45 Wyo. 201, 17 P.2d 659 (1933); Aderhold v. Stewart, 172 Okl. 72, 46 P.2d 340 (1935); Martin v. Eschelman, supra.

■ It appears to this Court that once the fact is established that the doctor left a foreign object in the body of his patient without a medical reason for so doing, the established rules of law governing the trial of negligence actions should be applied. If, in such a case, viewing all of the evidence in the light most favorable to the defendant, the only reasonable conclusion to be drawn is that of negligence, then a directed verdict would be proper. If, on the other hand, there is any evidence raising an issue of fact as to negligence, an issue must be submitted to the jury.

■ The plaintiff alleged that appellant "failed to fulfill the duty of reasonable care he owed to plaintiff in the performance of the operation," and was negligent in failing to ascertain that foreign matter was within plaintiff's body prior to closing the operational incision, and in allowing it to remain therein. Ordinarily what constitutes reasonable care is a question for the jury. There is evidence that appellant exercised some degree of care in that he made a visual inspection of the operational area and directed that a sponge count be made. Whether this amounted to reasonable care under the circumstances was a question for the jury.

Plaintiff also alleged that those assisting in the operation failed to "exercise a reasonable degree of care in performing their proper duties in counting the sponges;" that they were employees, servants, agents, or representatives of appellant; and that he was responsible in law both for the improper direction of said employees and because said employees' negligence is imputed to him under the doctrine of respondeat superior.

■ It is undisputed that the nurses assisting the doctor made a mistake in counting the sponges, a mistake which they discovered on making a recount. The nurses were experienced and had assisted the doctor in many previous operations. They were employed by the hospital and were paid by it. It is undisputed that between

**816**

96 and 144 sponges were used. They were bloody and had a tendency to stick together. The sponges are made up of several thicknesses of cheesecloth. There is no evidence to show whether these sponges are manufactured of a continuous length of cloth or whether small pieces of cloth are in some manner joined together. There is no evidence that one or more of the sponges had come apart. As presented to the court the evidence simply showed that the sponges were not counted correctly. The fact that they were bloody could not have caused the mistake, nor could the fact that two or more of the sponges might have stuck together. Had that been the case, the number of used sponges counted certainly would not have equaled the number furnished for use. There is no evidence that the count was necessarily hurried. The only reasonable conclusion to be drawn from the evidence detailing how the count was made, and the circumstances under which it was made, is that the circulating nurse was guilty of negligence in failing to properly count the sponges. That this was a proximate cause of the failure to remove the sponge from the body of appellee is established by the testimony of appellant that he relied on the count.

In Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933 (1954), the Court said:

"The vital inquiry in any case involving proximate cause is whether the negligent act set in motion a natural and unbroken chain of events that led directly and proximately to a reasonably foreseeable injury or result. If so, it is immaterial that the actual injury was done by the last event in the series." (citing authorities)

Here the doctor was told that the sponge count was correct. His visual check confirmed this information. As a result he closed the incision, leaving the sponge in the patient's body, which necessitated the second operation. The negligent act led directly and proximately to a reasonably foreseeable result, the second operation, and the physical pain and mental anguish caused thereby.

There is some evidence that appellee suffered physical pain and mental anguish prior to the trial of the case as a direct and proximate result of the second operation necessitated by the negligence established. We cannot say that the answer made by the jury to the issue on damages, $1,000.00, is so contrary to the weight of the evidence as to be clearly wrong.

Appellant is responsible for the damages found by the jury to have been directly and proximately caused by leaving the sponge within the body of appellee. McKinney v. Tromly, 386 S.W.2d 564, 12 A.L.R.3d 1011 (Tex.Civ.App., Tyler 1964, ref., n. r. e.).

The motion for rehearing is granted. The judgment of the trial court is affirmed, Associate Justice Peden not participating.