ACCEPTED
13-15-00170-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/23/2015 2:01:03 PM
CECILE FOY GSANGER
CLERK

## No. 13-15-00170-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/23/2015 2:01:03 PM
CECILE FOY GSANGER
Clerk

IN THE THIRTEENTH COURT OF APPEALS

CORPUS CHRISTI, TEXAS

## DIAGNOSTIC HEALTHCARE SERVICES/ D/B/A ONSITE BALANCE SOLUTIONS, LLC

*Appellant*

v.

## DIANE JACKSON

*Appellee*

## APPELLEE'S BRIEF

On Appeal from Cause No. 14-E-0190
In the 23rd District Court of Matagorda County, Texas

Alexander Forrest
State Bar No. 24065241
FORREST & KOLODNY, L.L.P.
1011 Augusta Drive, Suite 111
Houston, Texas 77057-2035
(713) 532-4474
(713) 785-0597 - Facsimile
aforrest@fko-law.com

Alan Kolodny
State Bar No. 24056882
FORREST & KOLODNY, L.L.P.
1011 Augusta Drive, Suite 111
Houston, Texas 77057-2035
(713) 532-4474
(713) 785-0597 - Facsimile
akolodny@fko-law.com

# IDENTITY OF PARTIES AND COUNSEL

In accordance with TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to this appeal:

| **Plaintiff / Appellee** | **Counsel for Plaintiff/Appellee** |
|---|---|
| Diane Jackson | Mr. Alexander Forrest<br>Mr. Alan Kolodny<br>FORREST & KOLODNY, L.L.P.<br>1011 Augusta Drive, Suite 111<br>Houston, Texas 77057-2035<br>(713) 532-4474 / (713) 785-0597 - Fax<br>aforrest@fko-law.com |

| **Defendant / Appellant** | **Counsel for Defendant / Appellant** |
|---|---|
| Diagnostic Healthcare Services,<br>d/b/a/ Onsite Balance Solutions, LLC | David Luningham<br>Watson, Caraway, Midkiff, & Luningham, LLP<br>309 W. 7th St., 1600 Oil & Gas Bldng<br>Forth Worth, TX 76013<br>(817) 870-1717 / (817) 348-4842 – Fax |

## OTHER PARTIES

### Co-Appellant Dr. P Palivela Raju, M.D.

*Trial Counsel and Appellate Counsel*
Gary Sommer and James R. Boston
State Bar No. 24010415
Boston & Hughes, P.C.
8584 Katy Freeway, Suite 310
Houston, TX 77057
Tel: (713) 961-1122
gsommer@bostonhughes.com
jboston@bostonhughes.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL…………………………………………ii

TABLE OF CONTENTS……………………………………………………….iii-iv

INDEX OF AUTHORITIES…………………………………………………..v-vi

STATEMENT OF THE CASE………………………………………………….1

STATEMENT OF JURISDICTION…………………………………………….2

ISSUES PRESENTED………………………………………………………..2

    A. Is Appellee's cause of action against Appellant a Health Care Liability Claim (HCLC) subject to Texas Medical Liability Act (TMLA – Chapter 74 of the Texas Civil Practice & Remedies Code)?

    B. In the alternative that Appellee's cause of action against Appellant is a Health Care Liability Claim (HCLC), did the trial court abuse its discretion denying Appellant's motion to dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b)?

        a. Does Appellee's expert report sufficiently "implicate" Appellant by addressing the statutory elements of the TMLA?

        b. Does Appellee's expert report sufficiently set forth the standard of care and explain how and why it was breached to satisfy the statutory requirements under the TMLA?

        c. Does Appellee's medical expert report provide a sufficient explanation of how different care from Appellee would have prevented Appellant's injuries in order to satisfy the statutory requirements of the TMLA?

ORAL ARGUMENT NOT REQUESTED…………………………………………...3

STATEMENT OF THE FACTS………………………………………………….3-6

SUMMARY OF ARGUMENT…………………………………………………6-8

STANDARD OF REVIEW………..…………………………………………8-9

ARGUMENT……………………………………………………………...9-33

I.    This Case Does Not Fall Under the Purview of the TMLA………...11-20

II.    In the Alternative that Appellee's Claims Against Appellant are Health Care Liability Claims, The Trial Court Did Not Abuse Its Discretion Denying Appellant's Motion to Dismiss Pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b) of the TMLA………..………..………...20-33

A. Dr. Ravdel's Expert Report implicates Appellant by outlining the applicable standard of care, and explaining how Appellant's breach of that standard of care proximately caused injury to Appellee………………………………………………...20-23

B. Given the "objective good faith" standard for statutory compliance under Tex. Civ. Prac. & Rem. Code §74.351(b) of the TMLA, Appellee's expert report sufficiently sets forth the standard of care and explains how and why that standard was breached…………………………………………………...23-28

C. Dr. Ravdel's Expert Report clearly explains that Appellee would not have fallen and sustained injuries if the medical chair used for balance testing had been properly maintained, a fact so simple that the doctrine of *res ipsa loquitur* applies…………………………………………………..28-33

CONCLUSION………………………………………………………..35-36

PRAYER……………………………………………………………….36

CETFICATE OF COMPLIANCE………………………………………...37

CERTIFICATE OF SERVICE…………………………………………37

# INDEX OF AUTHORITIES

**Cases**

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873 (Tex.2001)……………………………………………………………………….8, 22

*Beckwith v. White*, 285 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2009, no pet.)……………………………………………………………………………22

*Benish v. Grottie*, 281 S.W.3d 184 (Tex. App. – Fort Worth 2009, pet denied)………………………………………………………………………......30

*Doctors Hosp. at Renaissance, Ltd. v. Meja,* No. 13-12-00602-CV, 2014 WL 5859592 (Tex.App. – Corpus Christi Aug.1, 2013, pet. filed) (mem.op.)…...13

*Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782 (Tex. App. – Texarkana, Mar. 1, 2013, pet. denied)……...11, 12, 13, 14, 16, 17, 33

*Haddock v. Arnspiger,* 793 S.W.2d 948 (Tex. 1990)……………………………..31

*Harle v. Krchnak,* 422 S.W.2d 810, 815 (Tex. App. – Houston 1st 1969). ………31

*In re Stacy K. Boone*, 223 S.W. 3d 398 (Tex. App. – Amarillo 2006, orig. proceeding)……………………………………………………………..27

*Marks v. St. Luke's Episcopal Hosp*., 319 S.W.3d 658 (Tex. 2010)……………....12

*Methodist Health Care Sys. Of San Antonio, Ltd., LLP v. Dewey,* 423 S.W.3d 516, 516 (Tex. App – San Antonio 2014, pet. Filed)…………………………....13, 15

*Memorial Hermann Hosp. System v. Galvan,* 434 S.W.3d 176 (Tex. App. – Houston [14th Dist.] 2014, no pet. h.)………………………………………..8

*Sinha v. Thurston*, 373 S.W.3d 795, 800 (Tex. App—Houston [14th Dist.] 2012. no pet.)……………………………………………………………………21, 22

*Stockton v. Offenbach,* 336 S.W.3d 610 (Tex. 2011)……………………….......8

*Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171
(Tex. 2012)…..…………………………………………6, 12, 13, 14, 16, 17

*Weatherford Tex. Hosp. Co. v. Smart,* 423 S.W.3d 462 (Tex. App. –
Fort Worth 2014, pet. filed). …………………………………………...14

*Whitfield v. Henson*, 385 S.W. 3d 708 (Tex. App. – Dallas 2012, no pet.)……….27

*Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL
4259889 (Tex. App. Aug. 28, 2014)…………………………………………..9

**Statutes and Rules**
Tex. Civ. Prac. & Rem Code, Chapter 74………..………1,2, 7, 8, 9, 24, 26, 30, 35

TEX. GOV'T CODE 311.021(3)…………………………………………….26

## STATEMENT OF THE CASE

*Nature of the Case*:  This case was initially in the 412th Judicial District Court of Brazoria County, Texas under the Honorable W. Ed Brennan.  The case was transferred to the 130th Judicial District Court of Matagorda County and then to the 23rd Judicial District of Matagorda County under the Honorable Ben Hardin.

*Trial Court:*  The case was initially in the 412th Judicial Disctrict Court of Brazoria County, Texas under the Honorable W. Ed Brennan.  The case was transferred to the 130th Judicial District Court of Craig Estlinbaum.  Judge Eslinbaum then transferred the case to the 23rd Judicial District Court of Matagorda County under the Honorable Ben Hardin.

*Trial Court's*
*Disposition:*  Appellant failed to timely file his initial objections to Appellee's expert report.  (CR 1-103).  After the 120-day period expired, Appellant filed his Motion to dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351 (b).  (CR 44-48). Judge Hardin denied the motion to dismiss on March 2, 2015 (RR 4).

*Court of Appeals*:  Appellant filed his Notice of Accelerated Appeal on Monday, March 23, 2015 (CR 90-93).

## STATEMENT OF JURISDICTION

The 13th Court of Appeals has jurisdiction over this case under Government Code §22.201(n) because this case arose in Matagorda County.  The Court has jurisdiction to hear this appeal of the trial court's order denying Appellant's motion to dismiss under Tex. Civ. Prac. & Rem. Code §74.351(b) under Tex. Civ. Prac. & Rem. Code §51.014(a)(9) (Vernon Supp. 2014).

1

## ISSUES PRESENTED

A. Is Appellee's cause of action against Appellant a Health Care Liability Claim (HCLC) subject to Texas Medical Liability Act (TMLA – Chapter 74 of the Texas Civil Practice & Remedies Code)?

B. In the alternative that Appellee's cause of action against Appellant is a Health Care Liability Claim (HCLC), did the trial court abuse its discretion denying Appellant's motion to dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b)?

    a. Does Appellee's expert report sufficiently "implicate" Appellant by addressing the statutory elements of the TMLA?

    b. Does Appellee's expert report sufficiently set forth the standard of care and explain how and why it was breached to satisfy the statutory requirements under the TMLA?

    c. Does Appellee's medical expert report provide a sufficient explanation of how different care from Appellee would have prevented Appellant's injuries in order to satisfy the statutory requirements of the TMLA?

References to Clerk's Original Record are shown as (CR _____)

References to Reporter's Record are shown as (RR_____)

References to Co-Appellant's Clerk's Supplemental Record are shown as (CR Supp. Co-Appellant ___).

## ORAL ARGUMENT NOT REQUESTED

Appellee does not request oral argument.

**STATEMENT OF THE FACTS**

The following introductory facts are pertinent to the issues or points presented. TEX. R. APP. P. 38.1(f).

On March 28, 2012, Appellee Diane Jackson was at the medical office of Co-Appellant, P. Palivela Raju, M.D, an otorhinolaryngologist, otherwise known as an ear, nose and throat doctor (ENT). However, on that date Appellee was not on the medical practice premises to visit with Dr. Raju. Rather, Appellee was there to undergo balance testing at the hands of Appellant (Onsite Balance Solutions), a third party non-physician medical provider. Dr. Raju contracted with Appellant to perform this medical testing on the premises of his Bay City medical practice. In anticipation of Appellee's balance test, Danny Hertzer, a tech employed by on Onsite Balance Solutions, seated Appellee in a balance chair provided by Dr. Raju's office (CR Supp. Co-Appellant 75). After completing the choloic stimulation test, the Onsite Balance Solutions tech noticed that the "chair was starting to tilt on its back, so [I] moved to stand on the base to give the base more weight. Despite this the chair fell slowly on its back and once it had reached the ground Appellee slid out of it." *Id*. A "choloic stimulation" test is defined by the National Institute of Health's Medical Encyclopedia as a "test that stimulates your acoustic nerve by delivering cold or warm water or air into your ear canal." *See* http://www.nlm.nih.gov/medlineplus/ency/article/003429.htm. Clearly, nothing in

3

the definition of a "choloic stimulation" test implicates the necessary use of a medical balancing chair. The use of the chair was merely "incidental" to the performance of the "choloic stimulation" test. It is, therefore, clear from the facts that no ENT procedure caused the injury (CR Supp. Co-Appellant 75). During the entire time during which these events transpired, Appellee's ENT neurologist neither supervised the testing nor made available any of his nursing or administrative staff to assist Appellant, further evidence that no ENT procedure was being performed *Id.* The only two people in the patient room were Appellant's tech and Appellee. Appellee states very clearly in her in affidavit that "neither Dr. Raju nor anyone from his staff was in the room at the time of the accident." (CR 64). Furthermore, she states, "the accident occurred prior to the vertigo test." *Id.*

On January 24, 2014, Appellee filed this lawsuit against Appellant and Dr. Raju, alleging professional negligence in seating Appellee in a poorly maintained and malfunctioning patient room balance chair (CR 64). In order to comply with the expert report requirement for a health care liability claim under the Texas Medical Liability Act (TMLA – Chapter 74 of the Texas Civil Practice and Remedies Code), Appellee attached to her original petition a report from orthopedic surgeon Arnold Ravdel, M.D. (CR 65-67). On July 21, 2014, Appellee filed her Second Amended Petition and Request for Disclosure to assert general negligence and premises liability claims in addition to professional negligence, believing that the facts of

Appellee's claims likely do not implicate the TMLA. Although Appellee realizes that the factual backdrop of Appellee's case is atypical of health care liability claims, Appellee nonetheless asserts a health care liability cause of action in order not to lose the right to sue for professional negligence in the event this Court finds that Chapter 74 of the TMLA applies to her claims.

Appellant never objected to the sufficiency of Dr. Ravdel's report prior to the expiration of the 120-day period in Section 74.351 (a). Appellant further failed to make an appearance to join Co-Appellant's objections at a hearing on April 11, 2014 before the Honorable W. Ed Brennan of the 412th District Court of Brazoria County. Judge Brennan overruled Co-Appellant's objections. (RR 4). After the hearing, all parties agreed to transfer the case to Matagorda County, the county of proper venue. (RR 4). After the 120-day period expired on June 4, 2014, Appellant filed his motion to dismiss pursuant to Section 74.351 (b). (CR 44).

Appellant's motion to dismiss was first heard by the Honorable Craig Estlinbaum of the 130th District Court of Matagorda County on June 11, 2014. Judge Estlinbaum took the matter under advisement and later scheduled a second hearing for August 11, 2014. By the time of the hearing, the case had been transferred to the 23rd District of Matagorda County. The Honorable Ben Hardin of the 23rd District Court took the matter under advisement and denied Appellant's motion to dismiss on March 2, 2015. Appellee now responds to Appellant's interlocutory appeal of

5

Judge Ben Hardin's denial of Appellant's Motion to Dismiss before this honorable Texas 13th Court of Appeals.

## SUMMARY OF THE ARGUMENT

In responding to Appellant's Motion to Dismiss in the lower court, Appellee specifically informed the court that Appellee's claims are not health care liability claims, and her filing an expert report under Chapter 74 of the Texas Civil Practice & Remedies Code was purely done in an abundance of caution, and in acknowledgement of the split between appellate courts interpreting the *Texas West Oaks Hosp., LP v. Williams* precedent. Appellee states as follows:

> The only reason a medical expert opinion is provided in this case is because Texas law requires that any Plaintiff injured on the premises of a medical establishment open to the public file their claim as a health care liability claim, regardless of whether the injury was the result of a doctor performing a medical procedure or not. See *Texas West Oaks*, 371 S.W.3d 171, 178 (Tex. 2012).

Simply put, different appellate courts are so split in their interpretations of the *Texas West Oaks* opinion, that Appellee did not feel comfortable taking the risk of the statute of limitations expiring in the face of the split in authority between different appellate courts. Therefore, Appellee timely filed a medical expert report. However, the substance of the medical expert report does not address standards of care relating to any particular or specialized area of medicine. Rather, the substance of the report focuses on the condition of the medical chair, its maintenance or lack thereof, and

6

the duties owed by any medical provider to deliver safe premises and medical equipment to patients. (CR 65-67).

In the alternative that this Court finds that Appellee's claims are health care liability claims subject to Chapter 74 of the Texas Practice and Remedy Code, Appellee contends that Dr. Ravdel's expert report nonetheless satisfies the statutory requirements. A brief analysis of the facts of the lower court quickly reveals that the relevant subject area is not any specific area of medical practice, but the general standard of care any medical physician owes his patients as a premises owner, which is to ensure that all his medical equipment and chairs are sufficiently maintained and in working order such that a medical chair used for balance testing does not collapse when a patient is seated in it. Given the limited discovery rights of Appellee prior to Judge Hardin's ruling on Appellant's Motion to Dismiss Pursuant to the TMLA, coupled with a factual backdrop where Appellee was injured after merely being seated in a chair that could not hold her weight, the "objective good faith effort" standard for determining whether an expert report is statutorily compliant with Chapter 74 of the Texas Medical Liability Act has clearly been met. Tex. Civ. Prac. & Rem. Code 74.351(l). The Court should, therefore, find that Appellee submitted a medical expert report in compliance with Tex. Civ. Prac. & Rem. Code 74.351(b).

**STANDARD OF REVIEW**

7

The standard of review for judging a trial court's decision with regard to expert reports is the abuse of discretion. Generally, we review a trial court's order granting or denying a section 74.351(b) motion under an abuse-of-discretion standard. *See Stockton v. Offenbach,* 336 S.W.3d 610, 615 (Tex. 2011); *Memorial Hermann Hosp. System v. Galvan,* 434 S.W.3d 176, 178 (Tex. App. – Houston [14th Dist.] 2014, no pet. h.) But, when the issue presented requires statutory interpretation or a determination of whether Chapter 74 applies to a claim, the issue is a question of law to which we apply a de novo standard of review. *See Stockton,* 336 S.W.3d at 615; *Galvan,* 434 S.W.3d at 179. *CHCA W. Houston, L.P. v. Shelley*, 438 S.W.3d 149, 151 (Tex. App. 2014).

Generally, we review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 858 (Tex. App. – Houston [1st Dist.] 2006, no pet.). However, because this appeal poses a question of statutory construction (i.e., whether Williams' claims are HCLCs), we apply a de novo standard of review. *Loaisiga v. Cerda,* 379 S.W.3d 248, 254–55 (Tex.2012); *Tex. W. Oaks,* 371 S.W.3d at 177. When determining whether a claim is a health care liability claim, we consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga,* 379 S.W.3d at 258. *Williams v.*

8

*Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL 4259889, at *2 (Tex. App. Aug. 28, 2014)

## ARGUMENT

In Appellant's brief, Appellant presents the main issue as whether the trial court abused its discretion in denying Appellant's motion to dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b). In framing the issue in this manner, Appellant assumes that the lower court made a finding that Appellee's claims are health care liability claims pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b). However, nothing in the lower court's record includes any order where the Judge Hardin has made a ruling on whether Chapter 74 of the TMLA is controlling in this case, or whether the claims asserted by Appellee are necessarily health care liability claims. The pleadings in the lower court clearly show that Appellee has asserted three claims against Appellant, only one of which is a health care liability claim. Appellant provides no argument as to how or why the lower court's denial of his Motion to Dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b) makes Appellee's claims healthcare in nature, or includes any finding of fact on such an issue. There is not a an order in the lower court whereby Judge Hardin states that his denial of Appellant's Motion to Dismiss was based on a finding that concludes that Chapter 74 of the Texas Civil Practice and Remedies Code necessarily applies to the facts in this case. Furthermore, Appellant never filed any motion for declaratory judgment

9

asking the trial court to make any such finding. By entirely avoiding the argument and failing to explain to this Court why Appellant believes Appellee's claims are health care liability claims, Appellant improperly asks this Court to assume a fact not in evidence.

After impliedly asking this Court to make the unwarranted assumption that Appellee's claims are healthcare liability claims, Appellant argues that the trial court abused its discretion in finding Appellee's expert report provided a fair summary of the standard of care and causal relationship. Appellant's brief focuses on the alleged statutory failures of Appellee's expert report without providing the necessary factual analysis as to why Appellee's expert report should even be subject to a Section 74.351 analysis. Appellee's pleadings assert general negligence and premises liability claims, and Appellee relies on the same expert report in asserting those claims as it would asserting a health care liability claim. To the extent Appellee's case against Appellant is not a health care liability claim, Appellant makes no arguments as to why the expert report would otherwise not be sufficient.

Appellee's claims do not fall under the purview of the Texas Medical Liability Act (TMLA) because the "setting" or "place" of injury is not the controlling question for determining whether the TMLA applies. "The simple fact that an injury occurred on a health care providers' premises is not enough." *Good Shepherd Medical Center-Linden, Inc. v. Twilley, 422 S.W.3d 782, 788* (Tex. App. - Texarkana, Mar. 1, 2013,

10

pet. denied). There simply is no other factual basis for Appellant's assumption that Appellee's claims fall under the purview of Chapter 74 of the Texas Practice and Remedies Code except the fact that the injury occurred in a medical office. However, when this fact is weighed against other facts provided hereto and discussed below, there is good reason to find that Appellant's case falls outside the purview of the Texas Medical Liability Act (TMLA).

## I. THIS CASE DOES NOT FALL UNDER THE PURVIEW OF THE TMLA

A contentious issue in any litigation involving a health care provider is whether the Texas Medical Liability Act, Chapter 74 of the TMLA applies to claimant. Although a contentious issue, it is an issue Appellant entirely avoids in his brief.

The three basic elements of a health care liability claim are defined in the TMLA: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause injury to the claimant. *Texas West Oaks*, 371 S.W.3d at 179-80. The determination of whether a claim is a HCLC requires an examination of the underlying nature of the claim and the facts related thereto. See *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010).

11

The facts surrounding Appellee's case, for example, raise the question of whether medical treatment was even being provided at the time of her injuries. This is an important question that should have been addressed in Appellant's brief. If Appellant did not provide medical care at the time of Appellee's injuries, and Appellee was injured instead by faulty equipment rather than a medical provider's hand, Appellee's claims are safety-related rather than health care-related. In March 2013 the Texarkana court became the first appellate court to address the question of the nexus between safety-related complaints and health care in light of the Supreme Court's decision in *Texas West Oaks*. Many cases have since expanded on the *Texas West Oaks* decision. In the case of *Good Shepherd Medical Center–Linden, Inc. v. Twilley,* the hospital's director of plant operations sued the hospital for negligence after he fell from a ladder attached to the hospital building and later tripped and fell over a mound of hardened cement on the hospital's premises. 422 S.W.3d at 783. The trial court denied the hospital's motion to dismiss the employee's claims for failure to supply an expert report under the TMLA. *Id.* at 784. On appeal, the Texarkana court affirmed the trial court's ruling and held that, while a safety claim need not be *directly* related to health care pursuant to *Texas West Oaks v. Williams,* there must be some *indirect* link between an employee's safety claim and the provision of health care in order for the claim to fall under the TMLA. *Id.* at 785.

12

Although safety claims do not need to be *directly* related to health care pursuant to *Texas West Oaks,* there must, nevertheless, be some *indirect,* reasonable relationship between claims and the provision of health care for such claims to be health care liability claims. *Doctors Hosp. at Renaissance, Ltd. v. Mejia,* No. 13–12–00602–CV, 2013 WL 4859592, at *2 (Tex. App.- Corpus Christi Aug.1, 2013, pet. filed) (mem.op.) (interpreting *Texas West Oaks* "narrowly to govern cases that involve safety claims that are indirectly related to health care"); *Twilley*, 422 S.W.3d at 788 (Tex. App. - Texarkana, Mar. 1, 2013, pet. denied) (interpreting *Texas West Oaks* narrowly and holding that safety claim must have at least indirect relationship to health care to be considered HCLC); *Methodist Health Care Sys. Of San Antonio, Ltd., LLP v. Dewey, 423 S.W.3d 516, 519* (Tex. App. – San Antionio, 2014, pet. filed)(holding that safety claims must have at least indirect relationship to health care to be considered a health care liability claim). As the *Twilley* court correctly noted:

> [I]f *every* safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries. *Twilley,* 422 S.W.3d at 788 (emphasis in original).

See also *Texas West Oaks,* 371 S.W.3d 171, 176 (Tex. 2012) (directing lower courts to distinguish ordinary negligence claims from HCLCs by focusing on "nature of the acts or omissions" causing alleged injuries).

Most courts weigh facts showing the degree to which the harm resulted from medical treatment to determine if there is at least an indirect nexus between the

medical provider's act or omission and the injury.  For example, in *Weatherford Tex. Hosp. Co. v. Smart,* the Fort Worth Court of Appeals held that a visitor falling on a puddle of water in a hospital was not indirectly related to health care or safety, did not require an expert report, and was not, therefore, a health care liability claim. *Weatherford Tex. Hosp. Co. v. Smart,* 423 S.W.3d 462, 463, 467–68 (Tex.App.-Fort Worth 2014, pet. filed).  In *Weatherford Tex. Hosp.* the facts made it more obvious that there was no indirect nexus, since the visitor was not on the medical premises for treatment.

Appellee agrees that her claims are rooted in facts that are distinguishable from the *Weatherford Tex. Hosp.* opinion.  Unlike that Plaintiff, Appellee was on the Bay City medical practice premises of Co-Appellant for medical treatment at the time of her injury.  She was visiting Co-Appellant's medical office so that a balance test could be performed on her to assess her treatment for vertigo.  However, Appellee's injuries were not the result of any balance test.  In fact, at the time of her injury, no medical treatment was performed on Appellee and no medical doctor was in her medical exam room.  (CR Supp. Co-Appellant 75).  In fact neither Appellant nor his medical staff was present at the time Appellee was seated in the medical chair by Appellant. (CR Supp. Co-Appellant 75).  The only other person present in the room at the time of Appellee's injury was Appellant's employee non-physician tech. (CR 74).  Like the Plaintiff in *Dewey* who had entered hospital grounds for purposes

14

of medical treatment (i.e., crutches) at the time of injury, Appellee had entered Appellant's medical office to undergo medical treatment at the time of her injury. 423 S.W.3d 516, 519–20 (Tex. App.- San Antonio 2014, pet. filed). Yet, even in *Dewey* the San Antonio Court of Appeals held that the claim of a hospital visitor on crutches who fell when the automatic entrance door to the hospital closed on him was not a health care liability claim. *Id.* The San Antonio Court of Appeals agreed "with the *Mejia* court that the supreme court recognized a new type of health care liability claim, one involving safety that is indirectly related to health care." *Id.* Nonetheless, the court concluded that even where the Plaintiff is on hospital grounds for purposes of medical treatment at the time of injury, this fact alone is not controlling. The *Dewey* decision stands for the proposition that even if the patient entered the medical premises for treatment (i.e., on crutches), absent other, specific and articulable defendant conduct showing the injury was born from negligent medical treatment, no sufficient nexus exists, even indirectly, to qualify the injury as a health care liability claim. *Id.* This is consistent with past precedent in *Texas West Oaks,* where the court held that "the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA." *Texas West Oaks*, 371 S.W.3d at 178. The decision is also consistent with the Texarcana Court of Appeals decision in *Twilley*, which held that "a safety claim must involve a more logical, coherent

nexus to health care. The simple fact that an injury occurred on a health care providers premises is not enough." *Twilley*, 422 S.W.3d at 788.

The *Texas West Oaks* court further observed that expert testimony is a factor in assessing the nature of a claim against a health care provider. That court found that where such testimony is necessary to prove or refute the merits of the employee's claims, such claims fall under the ambit of the Texas Medical Liability Act. *Texas West Oaks,* 371 S.W.3d at 182 ("[W]e now hold that if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."). In the *Twilley* case, it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care—OSHA ladder construction and installation and walking surface standards. A medical report would not shed any light on whether the ladder violated OSHA standards or whether the concrete mound constituted an unreasonable risk of harm. *Twilley* at 788.

Similarly, in Appellee's case, one would be hard pressed to locate a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care on the proper installation and maintenance of a medical chair used for balance testing. A medical expert report would not shed any light on whether

16

the chair was properly maintained and inspected or if it constituted an unreasonable risk of harm.

We learn from the *Texas West Oaks, Dewy,* and *Twilley* line of cases that the mere fact of being on the premises of a medical provider, even for the purposes of medical treatment, is not singularly sufficient to determine whether a plaintiff's claim against the medical provider is a health care liability claim. This line of cases is directing courts to look at the totality of the circumstances, with particular attention to the underlying nature of the act or omission on the part of the medical provider. In *Diversicare*, the Texas Supreme Court used the language "underlying nature of the claim" to describe the examination required to determine if a cause of action is a health care liability claim. *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex. 2005). The court held that one must examine the underlying nature of the claim when determining whether the claim is in fact a health care liability claim. *Id*. When conducting this analysis, the court provided guidance, finding that a cause of action implicates the departure from acceptable standards of medical care if the act complained of is an "inseparable part of the rendition of medical service." *Id.*

Whether Appellee's injuries are an inseparable part of the rendition of medical service is best determined by first asking what medical service was provided. The lower court judge was privy to evidence in this case, such as "Exhibit B" to

17

Appellee's Response to Appellant's Motion to Dismiss, where the Onsite Balance Tech present in the room at the time of Plaintiff's injury informs Appellant how the injury occurred (CR Supp. Co-Appellant 75). At no time in the statement does the tech refer to any medical procedure being conducted at the time Plaintiff's "chair was starting to tilt." *Id.* In fact, the balance tech reports the injury as occurring "after the coholic stimulation test" ceased. *Id.* Furthermore, the record shows very clearly that everyone in the office heard a loud bang, and a nurse by the name of "Robyn"

went to check on it, only to find out that Appellee had a "mishap with the chair." (CR 74). Assuming that no medical procedure was being performed at the time of the chair's tilt, this is the type of medical chair that could tilt anytime a patient or person is seated in it, regardless of whether medical treatment is being provided or whether the chair is being used for medical purposes. The Texas Supreme Court has stated that a claim is not necessarily a health care liability claim merely because a patient is injured by a physician or health care provider. See *Loaisiga v. Cerda,* 379 S.W.3d 248, 256–57 (Tex. 2012). "In some instances, the only possible relationship between the conduct underlying a claim and the rendition of medical services or health care will be the health care setting (i.e. the physical location of the conduct in a health care facility), [or] the defendant's status as a doctor or health care provider, or both." *Id.* In Appellee's case, the injury occurred when neither her ENT nor his

18

staff was in the medical exam room, and during a time when Appellant's employee balance tech had ceased all medical testing.

Appellee provided an expert physician report not to demonstrate that her claims are healthcare liability claims, but to show the court that it is precisely the opposite. The Texas Supreme Court has held "that if expert medical or health care testimony is necessary to prove or refute the merits of a claim against a physician or health care provider, the claim is a health care liability claim." *Texas West Oak*, 371 S.W.3d at 182. Given that Plaintiff's expert report adds very little to the factual analysis of what exactly happened on the day Appellant's medical chair failed to hold the weight of Appellee is evidence that medical physician expert testimony adds nothing to the merits of Appellee's claim against Appellant. Simply put, the factual backdrop of this case is so simplistic that with limited discovery rights there is simply nothing from which any expert can rely to add greater detail or explanation to the merits of Appellee's claims against Appellant. Appellee's medical expert clearly states in the record that the chair was not properly maintained and that Appellant's use of an improperly maintained chair constitutes negligence. To the extent Appellant argues that an ear, nose, and throat (ENT) specialist would be able to provide testimony that adds to the merits of Appellee's claims in the face of an injury that was not born from any ENT procedure and in the absence of any ENT

physician present at the time of the injury flies in the face of the facts and is arguably an argument made in bad faith.

II.    **IN THE ALTERNATIVE THAT APPELLEE'S CAUSE OF ACTION AGAINST APPELLANT IS A HEALTH CARE LIABILITY CLAIM (HCLC), DID THE TRIAL COURT ABUSE ITS DISCRETION DENYING APPELLANT'S MOTION TO DISMISS PURSUANT TO TEX. CIV. PRAC. & REM. CODE §74.351(b)?**

A.    **Dr. Ravdel's Expert Report implicates Appellant by outlining the applicable standard of care, and explaining how Appellant's breach of that standard of care proximately caused injury to Appellee.**

Dr. Ravdel's expert report provides that the standard of care under the facts of this case is to ensure that medical office equipment is properly maintained and in working order. Dr. Ravdel directly implicates Appellant in the breach of this standard of care when he writes in his expert report, "Onsite Balance Solutions administered a vertigo test using a medical chair that was *not* properly maintained." (CR 30). Dr. Ravdel also explains how this breach of the standard of care proximately caused Appellee's injuries, stating that "the chair improperly rolled after Ms. Jackson was seated in it, causing the patient to fall out of her chair and sustain an injury to her left knee and left shoulder." *Id.* Despite Appellant's contention to the contrary, Dr. Ravdel's expert report clearly outlines the standard of care, the breach of care, and the proximate causation that led to Appellee's injuries.

20

Appellant cites *Sinha v. Thurston* in support of its straw-man argument that an expert report "does not implicate a particular health care provider's conduct merely because the provider is a defendant in the lawsuit." *Sinha v. Thurston*, 373 S.W.3d 795, 800 (Tex. App—Houston [14th Dist.] 2012. no pet.). However, Appellee has never argued that Appellant is implicated in Dr. Ravdel's report simply because Appellant was named as a defendant. Unlike the appellant in *Sinha*, who was never even mentioned by name in the four corners of that expert report, Appellant in the present case is not only mentioned by name several times within the four corners of the expert report, but is directly linked to the breach of the standard of care that caused Appellee's injuries.

The trial court in the present case properly limited its assessment of Appellant's role in causing Appellee's injuries within the four corners of the document without making any inferences, as *Sinha* requires. The Court found that a good faith effort had been made to comply with Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). Consequently, applying the *Sinha* doctrine of implication to the present facts, which are easily distinguishable from the facts in *Sinha,* Appellant's conduct is clearly implicated in Dr. Ravdel's report.

The term "implicate," as it is used in Tex. Civ. Prac. & Rem. Code § 74.351(a), is not defined anywhere in the statute. Nonetheless, Appellant this has not prevented Appellant from dreaming up its own meaning for the term. According

21

to Appellant, "to 'implicate' Onsite Balance Solutions, Dr. Ravdel should have 'primarily implicated' Onsite Balance Solutions." *See* page 20 of Appellant's Brief. However, Appellant cites no authority that asserts that the word "implicate" in this statute means to "primarily implicate."

While Appellant references *Beckwith v. White*, which notes that the common-usage definition of "implicate" is "[t]o show (a person) to be involved in," Appellant puts her own deceptive spin on the *Beckwith* definition. *Beckwith v. White*, 285 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing BLACK'S LAW DICTIONARY 757 (7th ed. 1999)). The *Beckwith* court notes:

> a defendant's conduct is implicated when an expert report is 'directed primarily' to care provided by the defendant, *Ogletree v. Matthews,* 262 S.W.3d 316, 318 (Tex.2007), and the report informs the defendant of specific conduct called into question and provides a basis for the trial court to determine that the claim has merit. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 876–80 (Tex.2001)." *Id.* at 62.

Under the Black's Law Dictionary definition of "implicate," which is expanded upon in *Beckwith*, Dr. Ravdel's expert report undoubtedly implicates Appellant. Though Appellant is not a "person" as defined in Black's Law Dictionary, Dr. Ravdel's expert report explains how Appellant supervised and administered Appellee's testing. Multiple times over. (CR 30-32). It also mentions how Appellant placed Appellee in a chair that was not properly maintained. *Id.* Indeed, this report (1) is "directed primarily" to the vertigo testing provided by Appellant, (2) informs Appellant how it placed Appellee in a malfunctioning chair during this test, and (3)

provides the trial court with a basis to determine whether this conduct led to Appellee's fall and injuries. The way Dr. Ravdel's expert report was written fits perfectly within the *Beckwith* definition of "implicate" and therefore satisfies the statutory requirement for an expert report, pursuant to Tex. Civ. Prac. & Rem. Code § 74.351.

**B. Given the "objective good faith" standard for statutory compliance under Tex. Civ. Prac. & Rem. Code §74.351(b), Appellee's expert report sufficiently sets forth the standard of care and explains how and why that standard was breached.**

Dr. Ravdel's expert report provides that Appellant's standard of care under the facts of this case is to ensure that the medical office equipment is properly maintained and in working order. Appellee's expert report provided by Dr. Ravdel meets the "good faith effort" test for satisfying the Section 74.351(b) statutory requirement for sufficiency of an expert report based on the limited discovery rights available to Appellee and the factual backdrop where Appellee was injured by a medical chair that did not hold her weight.

Appellee provides the standards of care in his expert report with great specificity. With respect to the physician (Dr. Raju) standard of care, Dr. Ravdel states in his report:

> Dr. Raju, as the owner and sole physician at [his] medical practice located at 1410 Avenue F, Bay City, Texas 77414, is required to ensure that all medical equipment is properly maintained, in working order, and that his

23

patients are supervised by himself or qualified medical staff at all times when medical tests are being performed. (CR 66-67)

With respect to Appellant's (Onsite Balance Solutions) standard of care, Dr. Ravdel states in his expert report:

> "During the test, conducted by Onsite Balance Solutions, neither Dr. Raju nor his office staff were present when Onsite Balance Solutions performed the medical testing which led to Ms. Jackson's fall." (CR 66-67).

Appellant contends the above standards of care provided in Dr. Ravdel's expert report are so "vague" and "general" that the report fails to provide a fair summary of the standard of care. Specifically, Appellant claims that a proper summary as to the standard of care requires that the report provide specific information about what the defendant could have done differently. He further argues that because Dr. Ravdel does not state exactly how or what about the medical chair Appellant could have changed to ensure that the chair would hold Appellee's weight, his standard of care opinion is deficient.

The problem with Appellant's argument is that it completely ignores the "good faith effort" standard provided by the Texas Medical Liability Act on whether an expert report sufficiently satisfies the statutory requirements. Section 74.351 of the Tex. Civ. Prac. & Rem. Code provides:

> A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an

24

objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

Whether a "good faith effort" has been made by Appellee depends on what information was available to appellee and what information Appellee's medical expert relief on in drafting his opinion. In this early stage of the litigation, prior to the court ruling on a Chapter 74 challenge to Appellee's expert report, Appellee's discovery rights are limited. A plaintiff's discovery rights are limited where a defendant challenges a plaintiff's medical expert report under the Texas Medical Liability Act. The service of a sufficient expert report is a threshold stage in a Health Care Liability Claim. The Texas Supreme Court has held that Plaintiffs must pass that threshold in order to proceed with their claims and conduct full discovery. *In re Alford Chevrolet Geo,* 997 S.W.2d 173, 181 (Tex. 1999) (*citing* Tex. R. Civ. P 190.4(b)(2) and *USX Corp v. West,* 759 S.W.2d 764, 767 (Tex. App. – Houston [1st Dist.] 1988, orig. proceeding). Without the right to inspect the medical chair or conduct depositions prior to the court ruling on Plaintiff's Motion to Dismiss for Insufficiency of Appellee's Expert Report, the only information available to Appellee's medical expert was information taken from Appellee's own medical records. (CR 110 – 120). However, this information was limited in scope, and did not include pictures of the medical chair at issue in this case or any items related to the maintenance of the chair at issue, such as logs or maintenance manuals. To require Appellee's medical expert to provide greater specificity when the necessary

25

information is not part of Appellee's medical records and discovery rights are limited amounts to a travesty of reason and justice. To state that the TMLA requires greater specificity from a medical expert report under these facts conflicts with the Texas Government Code, which provides that when a statute is enacted, there is a presumption that "a just and reasonable result is intended." TEX. GOV'T CODE 311.021(3). Given the limited amount of information available to Appellee's medical expert, Appellant is being unreasonable in its expectation that Dr. Ravdel explain exactly what makes the medical chair at issue dysfunctional. To hold Appellee's medical expert under such a standard of proof at this early state of the litigation is in direct conflict with the Texas Supreme Court's decision in *American Transitional Care Ctrs, Inc. v. Palacios*, originally cited by Appellee in Appellee's response to Appellant's Motion to Dismiss (CR 61). In that decision, the Court states the following:

> "…to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial." 46 S.W.3d 878, 875.

Essentially, with the expectation that Appellant explain exactly how the medical chair at issue is dysfunctional at this early stage of litigation, Appellant's brief is tantamount to asking this Court to hold Appellee's expert report to the "same

requirements as the evidence offered in a summary judgment proceeding or at trial."

*Id.*

To meet the statutory requirements under Chapter 74 of the Texas Practice and Remedies Code, an expert report must provide a "fair summary of the expert's opinions" and adequately inform the defendant of the specific conduct called into question. *In re Stacy K. Boone*, 223 S.W. 3d 398, 406 (Tex. App. - Amarillo 2006, orig. proceeding). If a court can determine the basis of a plaintiff's complaint, the report is adequate. *Id*. An expert report which "adequately demonstrates the expert's opinion that the claim has merit, implicates appellant's conduct, and constitutes a fair summary of his report on causation is adequate." *Whitfield v. Henson*, 385 S.W. 3d 708 (Tex. App. - Dallas 2012, no pet.). This holds true regardless of whether or not the report addresses every causation issue that a defendant may raise in a challenge. *Id*.

Plaintiff's expert gives a fair summary of the standard of care given what is known about Plaintiff's injury and the simplistic facts and circumstances leading to Plaintiff's injury. The facts of each individual case control the detail required in the expert report, as the standard is whether the plaintiff has made a "good faith effort" to meet the statutory requirement. See Tex. Civ. Prac. & Rem. Code §74.351(1). This analysis necessarily varies depending on the facts of each particular case. The qualifications of the medical staff supervising Plaintiff and the maintenance history

of the chair are not known at this time. Nothing is known about the design or condition of the chair except for facts and inferences drawn from medical records. Given Appellee's limited discovery rights at this early stage in the litigation, Appellee has limited tools available to acquire greater information. Therefore, Appellee has used its best efforts and acted in good faith under these facts to comply with the statutory requirements of the Texas Medical Liability Act.

**C.  Dr. Ravdel's Expert Report clearly explains that Appellee would not have fallen and sustained injuries if the medical chair used for balance testing had been properly maintained, a fact so simple that the doctrine of *res ipsa loquitur* applies.**

Appellant alleges Dr. Ravdel's causation opinions are lacking explanation of how different care would have prevented Appellee's injuries. Dr. Ravdel's expert opinion is simple because of the limited information provided in Appellee's medical records, which include no information relating to the maintenance history or condition of the medical chair at issue in this case. Furthermore, the facts surrounding Plaintiff's injuries are simple facts that do not involve matters typical of medical negligence cases, where the negligence is born from the negligent application of complex medical procedures and treatments. Appellant's case is particularly simplistic given the party admission by the Onsite Balance Solutions tech, who states that Appellant's chair failed to hold Appellee's weight "after" medical balance testing had ceased. (CR Supp. Co-Appellant 75).

28

While simplistic, Dr. Ravdel's causation opinion is not conclusory or based on assumptions. His expert opinion is simple only because the facts surrounding Plaintiff's injuries are equally simple given Appellee's limited discovery rights at this early stage of the litigation. Given the facts available to Appellee, Dr. Ravdel's report did the best that any report could do under the circumstances. Dr. Ravel states very clearly in his report, as follows:

> The chair improperly rolled after Ms. Jackson [Appellee] was seated in it, causing the patient to fall out of the chair and sustain injury to her left knee and shoulder" and that "in all reasonable medical probability, the torn medial and lateral menisci found in the left knee joint, and the partial thickness rotator cuff tear, with labral, glenoid tear, is a direct result of the fall on March 28th, 2012, when Plaintiff was seated in what appears to be a poorly maintained or malfunctioning chair in the control of Dr. Raju and operated by Onsite Balance Solutions. (CR 65-67)

Given the common sense facts and inferences underlying Plaintiff's claim, there is simply no way for Dr. Ravdel to reach any other conclusion except that the medical chair used for balance testing would not have rolled and fallen over if it had been properly maintained, and that Appellee was injured as a result of being seated in this chair. (CR 65-67). With the discovery period uncompleted, and with limited discovery rights, Appellee should not be expected to explain exactly what part of the chair was malfunctioning to meet the statutory requirements for sufficiency of the expert report under the TMLA. Appellee had not even had a chance to inspect the chair at issue given this early stage of the litigation. Furthermore, Appellant conveniently failed to include in its record, a copy of Appellee's motion to inspect

29

the chair in Dr. Raju's Office, nor Dr. Raju's Objection to Appellee's motion to inspect.

Dr. Ravdel's expert report is sufficient under the TMLA, since he based his opinion on inferences drawn from Appellee's medical records. In *Benish v. Grottie*, appellant argued the trial court abused its discretion in finding appellee's expert report provided a fair summary of the standard of care and causal relationship when the expert's opinions were based on unsupported assumptions. However, the appellate court found it was clear from the report, that the expert made inferences based on the medical records, a practice that is accepted by the courts. *Benish v. Grottie*, 281 S.W.3d 184, 195 (Tex. App. - Fort Worth 2009, pet denied). Therefore, the threshold inquiry for whether an expert report is grounded in assumptions or fact is not the nature of the opinion in a vacuum, but rather, whether or not the opinion is based on medical records relevant to the claimant's injuries and based on the particular facts of the case at hand.

The nature of Appellee's injury is so simplistic, the doctrine of *res ipsa loquitur* should be applicable in this case. (CR 60). Upon Plaintiff being seated in the chair, the chair did not hold Plaintiff's weight. Although courts have generally recognized that *res ipsa loquitur* is inapplicable in medical malpractice cases, there are specific exceptions where it is applicable. See *Haddock v. Arnspiger,* 793

S.W.2d 948, 951 (Tex. 1990), citing *Harle v. Krchnak,* 422 S.W.2d 810, 815 (Tex. App. – Houston 1st 1969).

The court in *Haddock* held that an exception to the doctrine that *res ipsa loquitur* is not applicable in medical malpractice cases is recognized when "the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert *testimony.*" *Id.* The court goes on to cite examples of the exception, such as "negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments in the body." *Id.* (CR 60).

The standard for the exception cited by the *Haddock* Court equally applies in Plaintiff's case before this Court. The nature of the alleged malpractice and injuries in Plaintiff's case is plainly within the common knowledge of laymen, who would agree that a chair designed to test for vertigo should not topple to the ground merely because a patient is seated in it. *Id.*

There is no reason to believe medical treatment outside of proper maintenance to the balancing chair, either direct or indirect, had anything to do with the injuries sustained by Appellee. At the time of Appellee's injury, no medical doctor or any member of Appellant's staff was present in the patient room. The only person in the patient room other than Appellee was a non-physician Onsite Balance Solutions tech (CR Supp. Co-Appellant 75). The tech describes the incident in an email to Dr.

31

Raju, where he clearly implies that whatever caused the chair to fall had nothing to do with the practice of any medical procedure. *Id.* He states that after moving his "cohloic stimulation" testing equipment, he noticed that the "chair was starting to tilt on its back, so [I] moved to stand on the base to give the base more weight. Despite this[,] the chair fell slowly on its back" *Id.* Within this factual backdrop, Appellee's medical expert was able to fairly conclude that the chair began to roll, ultimately falling to the ground and taking Plaintiff down with it. He further concluded that Appellee fell to the floor with the chair, falling on the left side of her body when the chair flipped on its side. (CR 65-67). Given the common sense facts and inferences underlying Appellee's claim, there is simply no way for Dr. Ravdel to reach any other conclusion except that the medical chair used for balancing testing would not have rolled and fallen over if it had been properly maintained.

## CONCLUSION

The Texas Supreme Court requires an analysis into the gravamen of the claim in order to determine if the claim is a health care liability claim subject to the Texas Medical Liability Act, Chapter 74 of the Texas Civil Practice and Remedies Code. In this case, the gravamen of the claim is the proper maintenance and repair of a chair. The simple fact that an injury occurred on a health care providers premises is not enough to make it subject to the Texas Medical Liability Act.

32

In this case, the underlying nature or gravamen of the claim is the proper maintenance and repair of a chair. A safety claim must "involve a more logical coherent nexus to health care." *Twilley* at 6-7. The simple fact that the injury occurred on a health care provider's premises is not enough to make it subject to the Texas medical Liability Act. *Id.* In this case, Appellee does not need expert medical testimony to prove the merits of her claim, as it is unrelated to health care. One would be hard pressed to locate a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care on the proper installation and maintenance of a balancing chair. A medical expert report would not shed any light on whether the chair was properly maintained and inspected or if it constituted an unreasonable risk of harm.

Appellee maintains that her claim is not a health care liability claim and therefore not subject to the Chapter 74 expert report requirement. However, in the alternative, if the claim is found subject to Chapter 74 of the Tex. Civ. Prac. & Rem. Code, Appellee's expert is qualified to provide expert testimony and has given a fair summary of the standard of care and causal relationship given what is known about Plaintiff's injury and the simplistic facts and circumstances leading to said injury, especially in the factual background of limited discovery rights and medical records that do not speak to the maintenance history of the balance chair at issue. It should be sufficient to say that where a medical provider seats a patient in a chair that is not

properly maintained, he has breached his duty to ensure that the premises are safe for his clients. As to whether Dr. Raju or Appellant had greater control of the condition of the chair is a fact yet to be discovered, as the discovery stage of trial has only just begun, and is limited for the reasons already discussed. However, no matter who is more responsible, all medical personal seating their patient in any chair have a duty to ensure that the medical chair will hold their weight.

## PRAYER

For the above reasons, this Court should affirm the trial court's order denying Appellant's motion to dismiss. In the event this Court concludes that Appellee's claims are governed by the Texas Medical Liability Act (Chapter 74 of the Texas Civil Practice and Remedies Code) and that Appellee's expert report is deficient, Appellee respectfully asks for an additional 30 days to cure the defect on remand.

Respectfully Submitted,

/s/ Alexander Forrest

_____

Alexander Forrest
SBOT: 24065241
Forrest & Kolodny, LLP
1011 Augusta Dr., Ste. 111
Houston, TX 77057
Tel: (713) 598-0339
Fax: (713) 785-0507

34

## CERTIFICATE OF COMPLIANCE

I certify that this Appellee's 1st Amended brief was prepared with Microsoft Word 2010, and that, according to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 9,151 words.

/s/ Alexander Forrest

_____

ALEXANDER FORREST

## CERTIFICATE OF SERVICE

In accordance with Rule 9.5(e) of the Texas Rules of Appellate Procedure, I certify that a copy of Appellant's Original Brief was electronically served on Appellant through e-filing on this 23rd day of June, 2015.

David Luningham
Watson, Caraway, Midkiff, & Luningham, LLP
309 W. 7th St., 1600 Oil & Gas Bldng
Forth Worth, TX 76013
(817) 870-1717 / (817) 348-4842 – Fax

/s/ Alexander Forrest

_____

ALEXANDER FORREST